923 So.2d 81 (2005)
ANR PIPELINE COMPANY
v.
LOUISIANA TAX COMMISSION, Malcolm B. Price, Jr., Chairman of the Louisiana Tax Commission, Kenneth P. Naquin, Jr., Member of the Louisiana Tax Commission, and Russel R. Gaspard, Member of the Louisiana Tax Commission
ANR Pipeline Company, Stingray Pipeline Company, L.L.C., UT Offshore System, L.L.C., Tennessee Gas Pipeline Company and Southern Natural Gas Company
v.
Louisiana Tax Commission, Malcolm B. Price, Jr., Chairman of the Louisiana Tax Commission, Kenneth P. Naquin, Jr., Member of the Louisiana Tax Commission, and Russel R. Gaspard, Member of the Louisiana Tax Commission
Stingray Pipeline Company, L.L.C.
v.
Louisiana Tax Commission, Malcolm B. Price, Jr., Chairman of the Louisiana Tax Commission, Kenneth P. Naquin, Jr., Member of the Louisiana Tax Commission, and Russel R. Gaspard, Member of the Louisiana Tax Commission
UT Offshore System, L.L.C.
v.
Louisiana Tax Commission, Malcolm B. Price, Jr., Chairman of the Louisiana Tax Commission, Kenneth P. Naquin, Jr., Member of the Louisiana Tax Commission, and Russel R. Gaspard, Member of the Louisiana Tax Commission
High Island Offshore System, L.L.C.
v.
Louisiana Tax Commission, Malcolm B. Price, Jr., Chairman of the Louisiana Tax Commission, Kenneth P. Naquin, Jr., Member of the Louisiana Tax Commission, and Russel R. Gaspard, Member of the Louisiana Tax Commission
Tennessee Gas Pipeline Company
v.
Louisiana Tax Commission, Malcolm B. Price, Jr., Chairman of the Louisiana Tax Commission, Kenneth P. Naquin, Jr., Member of the Louisiana Tax Commission, and Russel R. Gaspard, Member of the Louisiana Tax Commission
Southern Natural Gas Company
v.
Louisiana Tax Commission, Malcolm B. Price, Jr., Chairman of the Louisiana Tax Commission, Kenneth P. Naquin, Jr., Member of the Louisiana Tax Commission, and Russel R. Gaspard, Member of the Louisiana Tax Commission
Southern Natural Gas Pipeline Company
v.
Louisiana Tax Commission, Malcolm B. Price, Jr., Chairman of the Louisiana Tax Commission, Kenneth P. Naquin, Jr., Member of the Louisiana Tax Commission, and Russel R. Gaspard, Member of the Louisiana Tax Commission
ANR Pipeline Company, High Island Offshore System, L.L.C., Tennessee
Gas Pipeline Company, Southern Natural Gas Company, UT Offshore System, L.L.C., and Mid-Louisiana Gas Company
v.
Louisiana Tax Commission, Malcolm B. Price, Jr., Chairman of the Louisiana Tax Commission, Kenneth P. Naquin, Jr., Member of the Louisiana Tax Commission, and Russel R. Gaspard, Member of the Louisiana Tax Commission
Tennessee Gas Pipeline Company
v.
Louisiana Tax Commission, Russel R. Gaspard, Chairman of the Louisiana Tax Commission, Kenneth P. Naquin, Jr., Member of the Louisiana Tax Commission, and Jewette Farley, Member of the Louisiana Tax Commission
ANR Pipeline Company
v.
Louisiana Tax Commission, Russel R. Gaspard, Chairman of the Louisiana Tax Commission, Kenneth P. Naquin, Jr., Member of the Louisiana Tax Commission, and Jewette Farley, Member of the Louisiana Tax Commission
Southern Natural Gas Company
v.
Louisiana Tax Commission, Russel R. Gaspard, Chairman of the Louisiana Tax Commission, Kenneth P. Naquin, Jr., Member of the Louisiana Tax Commission, and Jewette Farley, Member of the Louisiana Tax Commission.
Nos. 2005 CA 1142 to 2005 CA 1169.
Court of Appeal of Louisiana, First Circuit.
September 7, 2005.
*84 Angela Whitaker Adolph, Hilton Sutton Bell, James K. Irvin, New Orleans, Laurence E. Garrett, Colorado Springs, CO, James A. Porter, Houston, TX, for Plaintiffs/Appellants ANR Pipeline Company, UT Offshore System, L.L.C., High Island Offshore System, L.L.C., Stingray Pipeline Company, L.L.C., Tennessee Gas Pipeline Company, and Southern Natural Gas Company.
Brian A. Eddington, Baton Rouge, Robert D. Hoffman, Jr., New Orleans, for Defendant/Appellee Louisiana Tax Commission.
Before: CARTER, C.J., PETTIGREW, and WELCH, JJ.
PETTIGREW, J.
The instant appeal concerns the appropriate remedy upon a determination that the Louisiana Tax Commission (the "Commission") has administered the ad valorem tax scheme in a manner that violates the uniformity requirement of the Louisiana Constitution and a taxpayer's equal protection and due process rights under the Louisiana and United States Constitutions.

FACTS
ANR Pipeline Company, UT Offshore Company, L.L.C., High Island Offshore System, L.L.C., Stingray Pipeline Company, Tennessee Gas Pipeline Company, and Southern Natural Gas Company ("plaintiffs") provide natural gas transportation, storage, and balancing services in Louisiana and in interstate commerce and are regulated by the Federal Energy Regulatory Commission pursuant to the Natural Gas Act, 15 U.S.C. § 717, et seq. Plaintiffs each own interstate natural gas transmission pipelines in Louisiana, which properties are classified and taxed as public service properties under La. R.S. 47:1851(K) and (M).[1]
*85 Under the Louisiana Constitution, property is classified and different rates or ratios of fair market value are assigned to those classifications for ad valorem tax purposes.[2] La. Const. art. VII, § 18(B). The assessed value of "public service properties," excluding land, is twenty-five percent (25%) of the fair market value, while the assessed value of "other property" is fifteen percent (15%) of the fair market value. The assessor determines the fair market value of all property subject to taxation within his respective parish or district, except for public service properties, which are appraised at fair market value and are assessed by the Commission or its successor. La. Const. art. VII, § 18(D). On or before September first of each calendar year, the Commission must allocate the assessed valuation of each public service company among the various local taxing units. La. R.S. 47:1855(A).
During the years 1994 through 2003 ("the tax years at issue"), a number of intrastate natural gas, oil, and other liquid pipeline companies were regulated by the Louisiana Public Service Commission as provided in La. R.S. 30:551(A) and qualified as public service companies under La. R.S. 47:1851(K).[3] The pipelines of these companies, however, were assessed by local assessors at fifteen percent (15%) of fair market value, while the public service properties of plaintiffs were assessed at twenty-five percent (25%) of fair market value.
For each tax year in question, plaintiffs paid their ad valorem taxes under protest.[4] Specifically, plaintiffs challenged that portion of taxes assessed in excess of fifteen percent (15%) of fair market value. Plaintiffs then filed twenty-eight individual suits for declaratory judgment and for refunds of the taxes paid under protest. Plaintiffs argued that the assessed values of their properties were calculated at twenty-five percent (25%) of fair market value, while the assessed values of other pipeline public service taxpayers that fall within the statutory definition of pipeline companies were calculated at fifteen percent (15%) of fair market value. Plaintiffs *86 asserted that this disparate treatment violates the uniformity requirement of the Louisiana Constitution, the equal protection and due process clauses of the Louisiana and United States Constitutions, and the commerce clause of the United States Constitution.[5] Also, plaintiffs alleged that La. R.S. 47:1851(K) is unconstitutional. These suits were consolidated for trial.

ACTION OF THE TRIAL COURT
These consolidated cases came before the trial court for a bench trial on January 10, 2005 through January 12, 2005, and concluded on January 18, 2005. Following trial and the submission of post trial briefs by the parties, the matter was taken under advisement. On March 30, 2005, the trial court issued written reasons and a written judgment rendering declaratory judgment in favor of the plaintiffs and finding that the actions of the Commission in the administration of Louisiana's ad valorem tax scheme, as it pertains to plaintiffs' public service pipelines, violated the equal protection and due process clauses of the Louisiana and United States Constitutions. The trial court pretermitted decision on the constitutionality of La. R.S. 47:1851(K) and (M) and remanded the matter to the Commission with instructions that the Commission require the parish assessors to assess the public service pipelines of the plaintiffs for each of the years at issue and calculate taxes based on fifteen percent (15%) of those assessments. The trial court further ordered the Commission to issue plaintiffs a full refund, plus interest, of the difference between the amounts paid for each year and the reassessed amount no later than September 20, 2005.
On April 14, 2005, plaintiffs filed a motion seeking a suspensive appeal, and on April 19, 2005, obtained an order to suspensively appeal the March 30, 2005 judgment. On appeal, the plaintiffs argue that the trial court erred in ordering the Commission to require local assessors to conduct a de novo valuation and assessment of public service properties, failing to address plaintiffs' commerce clause challenges, and ordering a refund from the Commission, rather than from the affected taxing jurisdictions. On June 7, 2005, the Commission filed an answer to the appeal, praying that the judgment appealed from be modified to extend the deadline for completion of reassessment to six months following the resolution of this appeal and to recognize that the Commission's duty to issue refunds is to be accomplished in the context of the statutory provisions governing modification of tax rolls. The Commission also made a demand for damages for frivolous appeal pursuant to La.Code Civ. P. art. 2164.

ISSUES PRESENTED FOR REVIEW
In connection with their appeal in this matter, plaintiffs present the following issues for consideration by this court:
1. Upon finding that Louisiana's ad valorem taxation scheme had been administered by the Commission in a manner that violated the uniformity requirement of the Louisiana Constitution and Appellants' equal protection and due process rights under the Louisiana and United States Constitutions because Appellants' public service property was assessed at 25% of fair market value and the public service property of a number of pipelines was assessed at 15% of fair market value, the trial court ordered the case remanded to the *87 Commission with instructions that refunds be based upon de novo assessments to be performed by local assessors who, by statute, have no jurisdiction, and lack the expertise and experience, to assess the property of public service companies.
a. Did the trial court lack jurisdiction to "remand" the case to the Commission, the defendant in this case, before which the case had never been pending, having been brought originally in the district court?
b. Did the trial court lack jurisdiction to order de novo assessments when the determinations of the fair market values of Appellants' public service properties were final and never challenged by Appellants, the Commission, or local assessors?
c. Do the local assessors lack jurisdiction to assess de novo the property of public service companies such as interstate natural gas pipeline companies?
2. Once the Commission has determined the fair market value of public service property for ad valorem tax assessment purposes, and that value has not been challenged by the taxpayer, can an arbitrary amount be fixed for purposes of calculating a tax refund?
3. When a taxpayer's rights to uniformity and equal protection of the law have been violated by the taxation of its property at a higher assessment ratio than the ratio applied to the property of similarly situated taxpayers,
a. Is a refund calculated by application of the lower assessment ratio to the fair market value of taxpayer's property the appropriate remedy?
b. If so, does de novo assessment of the taxpayer's property post-judgment destroy the appropriateness of that remedy?
4. Will the remedy ordered by the trial court create a new violation of Appellants' rights to uniformity of taxation and equal protection of the laws?
5. Can property be appraised at fair market value for ad valorem tax purposes, and, years later, be assessed on a different value standard for tax refund purposes, or is fair market value the only standard by which all property must be measured for all tax purposes?
6. When the Commission determines the fair market value of public service property for ad valorem tax purposes and the assessment ratio to be applied to that value is the subject of subsequent litigation between the taxpayer and the Commission, during which fair market value is never disputed, do principles of res judicata and estoppel bar any judicial or administrative alteration of that fair market value?
7. In a suit for refund of ad valorem taxes paid under protest, in which the court enters judgment that the assessments were levied in violation of the state and federal constitutions, but, as a remedy, the court orders reappraisals of Appellants' public service property by local assessors, who have neither the jurisdiction, authority, nor the expertise, to value that property, and such reappraisals, which are not authorized by statute, for which there are no established procedures or standards, which may result in the unilateral *88 fixing of values by local assessors, or may result in hundreds of administrative hearings before parish authorities and further litigation over values that have long been determined by the Commission, have not been questioned by anyone, and are therefore final, does the trial court's order provide meaningful post-deprivation relief?
8. Do a trial court's findings of violations of a state constitutional requirement of uniformity and state and federal constitutional requirements of equal protection and due process of law make it unnecessary for the court to address Appellants' claim of a violation of the federal Constitution's commerce clause?
9. Is the federal commerce clause violated when ad valorem assessment ratios on interstate pipeline property clearly exceed the rates on intrastate pipeline property that is similar in nature and is indisputably in competition with the interstate pipelines?

LEGAL PRECEPTS[6]
The issues presented by the plaintiffs on appeal involve questions of law. Specifically, plaintiffs aver that the remedy ordered by the trial court violates La. R.S. 47:1853 and La. R.S. 47:1856. Questions of law, such as the proper interpretation of a statute, are reviewed by this court under the de novo standard of review. La. Mun. Ass'n v. State, XXXX-XXXX, p. 35 (La.1/19/05), 893 So.2d 809, 836. When a trial court commits an error of law, the reviewing court is not subject to the manifest error standard and can make an independent determination of the facts from the record on appeal. Arabie Bros. Trucking Co. v. Gautreaux, XXXX-XXXX, p. 7 (La.App. 1 Cir. 8/4/04), 880 So.2d 932, 938, writ denied, 2004-2481 (La.12/10/04), 888 So.2d 846.

DISCUSSION AND ANALYSIS

Remand to the Tax Commission
In the instant appeal, plaintiffs argue that the trial court exceeded its jurisdiction by remanding the matter to the Commission for de novo assessments of plaintiffs' public service properties by local assessors. Rather, plaintiffs argue that the trial court was required to accept the final fair market values of the properties, as determined by the Commission, to multiply such values by an assessment ratio of fifteen percent (15%) to arrive at the new assessed valuations, and to order the refunds based on such amounts. In support of this argument, plaintiffs noted that these cases were filed as actions under the original jurisdiction of the trial courtnot as actions seeking review of administrative rulings of the Commission. To the extent that the trial court "remanded" the matter to the Commission, the plaintiffs contend that this is procedurally inappropriate.
The plaintiffs argue that the Louisiana Supreme Court has previously determined that the state district court has original jurisdiction in these consolidated cases. In ANR Pipeline Co. v. La. Tax Comm'n, XXXX-XXXX (La.7/2/03), 851 So.2d 1145, ("ANR IV"), the Louisiana Supreme Court granted certiorari, following this court's reversal of a judgment sustaining the Commission's exception raising the *89 objection of prematurity, to consider whether original jurisdiction over plaintiffs' constitutional challenges lies with the Commission or with Louisiana district courts. Therein, the Commission argued that the requirements of La. R.S. 47:1856(D)(1) deprive the district courts of original jurisdiction over any matter related to the correctness or legality, including constitutionality, of a public service property tax assessment. The ANR IV court explained, however, that the Commission's argument was compromised by the fact that the Commission was without subject matter jurisdiction to consider the constitutional issues presented.
The fact that the Legislature has granted the [Commission] general authority to hear "all objections" does not, and cannot, give the [Commission] subject matter jurisdiction over constitutional questions, as the [Commission] concedes. With few exceptions, Louisiana district courts have original jurisdiction over all civil and criminal matters. Moreover, "administrative agencies lack the power to hold statutory provisions unconstitutional." It is the district court that has original jurisdiction to rule on the constitutionality of statutes. Accordingly, in addition to the rule established by Triangle Marine [, Inc. v. Savoie, 95-2873 (La.10/15/96), 681 So.2d 937] allowing non-public service property taxpayers to file protests based on legality challenges directly in district court, we now hold that all taxpayers, including public service property taxpayers, may file protests based on constitutional challenges directly in district court.
ANR IV, XXXX-XXXX at 9, 851 So.2d at 1151 (citations omitted). Accordingly, the court held that the plaintiffs' protest to tax the assessments based solely on constitutional challenges was not prematurely filed in trial court, even though the Commission had not issued a final determination of assessed valuation.
Also, plaintiffs rely on La. R.S. 47:1856(F)(1), which sets forth the remedy available if the trial court determines that the assessed valuation is less than the amount set by the Commission. The statute provides:
F. (1)(a)(i) If the assessed valuation finally determined by the court is less than the amount determined by the Louisiana Tax Commission, the company shall be entitled to a credit against future property taxes in each jurisdiction affected or a refund in cash from each jurisdiction affected. Such credit shall be deducted by the Louisiana Tax Commission from the assessment of the year subsequent to any final determination. If a company chooses a refund, that refund shall be paid by the tax collector of each affected jurisdiction no later than March thirty-first of the year subsequent to any final determination. Interest shall be credited at the minimum rate as provided in R.S. 39:1217.1 or, if escrowed by the governing authority, at the actual rate earned on the money paid under protest in the escrow account during the period from the date such funds were received by the governing authority to the date of such refund.
Plaintiffs argue that this statute requires the trial court to review and determine the assessed valuation of the properties at issue, and does not expressly authorize or direct the trial court to remand the matter to the Commission or local tax assessors for reassessment. Accordingly, plaintiffs submit that the remedy provided by the trial court is contrary to law.
In opposition to the appeal, the Commission argues that this court made it clear in pre-trial proceedings that remand is both necessary and appropriate. In support, *90 the Commission cites the ruling of this court in ANR Pipeline Co. v. La. Tax Comm'n, 2001-2594 (La.App. 1 Cir. 2/23/04), 868 So.2d 950, ("ANR V"). In ANR V, this court considered on remand the Commission's exception raising the objection of no cause of action relative to the viability of an action against the Commission for the recovery of taxes. Specifically, the Commission asserted that it did not possess the statutory authority to order a nonparty tax collector to refund any purported taxes; therefore, it argued that no cause of action had been asserted by the plaintiffs. In finding that the local tax collectors were not necessary party defendants to the plaintiffs' suits, this court reasoned:
ANR avers that the statutory requirement that the [Commission] be named as defendant does not preclude the concomitant legislative requirement to name the tax collectors for the sought after remedy of a refund. We disagree. The authority and duty to supervise and regulate the assessments of local property taxes and public service properties clearly fall under the aegis of the [Commission]. The [Commission] remains statutorily imbued with the power to ascertain uniformity or lack of uniformity with constitutional or statutory requirements for each parish in the state. In the absence of conformity of assessments, the [Commission] is mandated to order the assessor to reappraise properties. Consistently, at the time of ANR's petitions to the court, La. R.S. 47:2110 E provided: "Any taxpayer in the state who has paid his taxes under protest as provided herein and who has filed suit under the provisions of R.S. 1856...shall cause to issue in said suit notice for the collection of said taxes in the parish or parishes where the property is located...." The [Commission] does not dispute that ANR properly issued said suit notices to the tax collectors in each of the individual lawsuits under review.
This suit challenged the constitutional solidity of taxation by the [Commission]. Given ANR's adherence to the statutory requirements at the time that the causes of actions were asserted, this court deems the naming of the [Commission] as the defendant to state a cause of action and potential remedy against the [Commission].
ANR V, 2001-2594 at 8, 868 So.2d at 955 (emphasis added) (citation and footnote omitted). Based on this rationale, the ANR V court reversed the judgment of the trial court, which granted the defendant's exception raising the objection of no cause of action, and remanded the matter to the trial court for consideration.
In light of the entire procedural history of these consolidated cases, the plaintiffs' argument appears somewhat misguided. In ANR IV, the Louisiana Supreme Court held that the trial court has original jurisdiction over constitutional challenges. It is widely recognized that challenges to the correctness of assessments, however, are properly decided by the Commission. Triangle Marine, Inc. v. Savoie, 95-2873, p. 4 (La.10/15/96), 681 So.2d 937, 939; ANR Pipeline Co. v. La. Tax Comm'n, 2000-2251, p. 5 (La.App. 1 Cir. 12/22/00), 774 So.2d 1261, 1264, writ denied, XXXX-XXXX (La.4/20/01), 790 So.2d 633 ("ANR I"). Indeed, in ANR V, this court indicated that the matter would be remanded to the Commission if, after trial on the merits, it were determined that the taxation was unconstitutional. Accordingly, plaintiffs have erroneously cited ANR IV for the proposition that the Commission is without authority to undertake and/or order reassessment of the properties at issue following remand by the trial court. Additionally, La. R.S. 47:1856(F)(1) merely *91 provides the procedure for refund or credit in the event the Commission erroneously assesses public service properties. The statute does not divest the Commission of authority to reassess the properties once suit is filed in trial court.
In fact, Louisiana courts have often remanded matters to the Commission upon determination that the assessment is improper. In Kansas City S. Ry. Co. v. La. Tax Comm'n, 95-2319 (La.App. 1 Cir. 6/28/96), 676 So.2d 812, the plaintiff railroad challenged the Commission's ad valorem property tax assessment.[7] In its system valuation of plaintiff, a Class II railroad, the Commission used the market, cost, and income approaches of appraisal, and weighted the cost approach at ten percent (10%), the income approach at twenty percent (20%), and the market approach at seventy percent (70%). In determining the fair market value of Class I railroads, by contrast, the Commission did not use the market approach, instead choosing to use only the income and cost approaches. Plaintiff filed suit, alleging that the differing methods of appraisal violated Article VII, § 18 of the Louisiana Constitution and La. R.S. 47:1853.[8] The trial court affirmed the final assessment by the Commission. On appeal, this court held that the assessment of the plaintiff's property violated the uniformity requirements of the Louisiana Constitution and La. R.S. 47:1853 and the equal protection clause of the Fourteenth Amendment to the United States Constitution. Based on this finding, this court reversed in part the decision of the Commission, as affirmed by the trial court, and remanded the matter to the Commission for reassessment of plaintiff's 1993 ad valorem tax assessment.
Likewise, in MidLouisiana Rail Corp. v. La. Tax Comm'n, 588 So.2d 1163 (La. App. 1 Cir.1991), writ denied, 594 So.2d 895 (La.1992), plaintiffs, MidLouisiana Rail Corporation and MidSouth Rail Corporation, both subsidiaries of MidSouth Corporation, appealed from a trial court judgment affirming the 1988 tax assessments to plaintiffs' corporations by the Commission. MidSouth Rail contended that the 1988 assessment of its company reflected an increase of two hundred fifty-seven percent (257%) from the Commission's assessment of the same property in 1986, while owned by another company. Similarly, MidLouisiana contended that the 1988 assessment of its property reflected an increase of one hundred thirty-three percent (133%) from the Commission's assessment of the property in 1987, while under different ownership. Plaintiffs alleged that these increases in their assessments occurred during a period when the Commission either reduced or held constant the assessments of property owned by other Louisiana railroads. On appeal, this court found that the Commission did not comply with the provisions of La. R.S. 47:1853(B) in determining the fair market value of the *92 railroad properties and that the assessments were in violation of Article VII, § 18(D) of the Louisiana Constitution. Accordingly, the matter was remanded to the Commission for a re-determination of the fair market value and assessment of the properties in accordance with law.
Under the law and jurisprudence, we find that the trial court was correct in remanding this matter to the Commission. On remand, it is within the province and authority of the Commission to correct errors in appraisal and/or assessment of public service properties. La. R.S. 47:1837.

Effect of Fair Market Value Determination by the Commission
Plaintiffs argue that the Commission's determination of the fair market value of plaintiffs' public service properties is final and binding. Plaintiffs point out that a public service taxpayer, who is dissatisfied with the initial determination of fair market value assigned by the Commission, may file a protest with the Commission within thirty days after receipt of the initial determination. La. R.S. 47:1856(A)(2). On appeal, plaintiffs aver that they did not protest the Commission's determination of the fair market values of their public service properties. Rather, plaintiffs argue that they challenged the ratio applied to fair market value in calculating plaintiffs' ad valorem taxes. Accordingly, plaintiffs submit that the values are not subject to modification by the trial court.
Plaintiffs cite the doctrine of res judicata in support of the argument that the Commission's determination of fair market value should not be disturbed. Pursuant to La. R.S. 13:4231, a final judgment is conclusive between the parties and bars litigation of subject matter arising from the same transaction or occurrence raised by a prior suit.[9] Citing Humphrey v. Robertson, 97-1742 (La.App. 4 Cir. 3/11/98), 709 So.2d 333, plaintiffs argue that this principle also applies to determinations of administrative agencies not challenged on judicial review.[10]
In addition, the plaintiffs aver that the doctrines of equitable estoppel and/or judicial confession prevent the Commission from challenging its determination of the fair market values of the properties at issue. Specifically, plaintiffs point out that the Commission admitted at trial that the *93 fair market values were correct.[11]
In opposition, the Commission submits that plaintiffs challenged the valuations because the petitions in the consolidated actions request that the Commission's determinations of assessed value of plaintiffs' public service properties be declared null and void. Accordingly, the Commission alleges that the plaintiffs are in bad faith to argue that the doctrines of res judicata and estoppel are applicable in this case.
In this case, the plaintiffs filed protests with the Commission and filed the instant suit seeking refund of taxes paid under protest. The plaintiffs cannot now argue, therefore, that the doctrines of res judicata and collateral estoppel preclude reassessment of the properties at issue, including reappraisal, particularly when it is necessary to satisfy the uniformity requirements of the Louisiana Constitution and the equal protection requirements of both the Louisiana and United States Constitutions.

Appropriateness of the Remedy Ordered by the Trial Court
The plaintiffs argue that the trial court erred in ordering a refund of the difference between the amounts paid under protest and the amounts based on reappraisals of the properties, because it is contrary to law and results in disparate treatment.
With respect to the contention that the trial court created a remedy that is unsupported by law, plaintiffs cite Article VII, § 18(D) of the Louisiana Constitution, which provides that each assessor determines the fair market value of all property subject to taxation within his respective parish or district, except public service properties, which are valued at fair market value by the Commission or its successor. To the extent that there is no constitutional, statutory or other legal basis for permitting local assessors to assess public service properties, the plaintiffs allege that the trial court erred in remanding the matter to the Commission with instructions that the Commission require the parish assessors to assess the public service properties of the plaintiffs for each of the years at issue.
Likewise, plaintiffs submit that the remedy ordered by the trial court violates La. R.S. 47:1853(D), which prohibits the adoption by the Commission of average life values of public service properties in lieu of appraisal of the individual companies. Local assessors rely on replacement cost schedules to value intrastate pipelines. Plaintiffs contend that replacement cost schedules place the same value on all property, regardless of the type of property (i.e. rate regulated v. non-rate regulated), zoning restrictions, and government regulation, while fair market value cannot exceed the amount upon which the property is capable of earning as an acceptable rate of return. Accordingly, plaintiffs aver that the use of replacement cost schedules by local assessors to determine the valuation of plaintiffs' public service properties would violate the statute.
Moreover, the plaintiffs submit that the trial court's judgment would result in disparate treatment since it would subject them to a valuation method different from that used to value other interstate natural gas pipeline companies in violation of La. R.S. 47:1853(B)(2).[12] Since a different valuation *94 method governs locally assessed pipelines, subjecting plaintiffs to those valuation methods, while all other interstate natural gas pipelines are valued by the Commission, will clearly result in the use of different valuation methodologies for taxpayers in the same class. Plaintiffs contend that the use of differing methodologies constitutes a violation of the uniformity requirements of the Louisiana Constitution and the equal protection requirements of the Louisiana and United States Constitutions.
Lastly, plaintiffs argue that the remedy ordered by the trial court violates their due process rights. Plaintiffs contend that upon remand for de novo assessment, the local assessors would be strongly motivated to arrive at higher valuations than those set by the Commission so as to reduce or eliminate the refunds due. Plaintiffs argue that this is unjust because there is no meaningful opportunity to challenge the outcome of the local assessor's valuations at this stage in the proceedings. Additionally, plaintiffs argue that due process requires a refund where they reasonably relied on the post-deprivation refund procedure provided by Article VII, § 3(A) of the Louisiana Constitution[13] and La. R.S. 47:1856. Plaintiffs argue that the only refund that would provide adequate relief is a full refund of all taxes paid under protest.
In opposition, the Commission argues that the plaintiffs on appeal are asking that they be valued as public service properties but assessed as "other property" at fifteen percent (15%) of fair market value. In this sense, the Commission has alleged that the plaintiffs are attempting to "game the system" by having the lower fair market valuation resulting from classification as public service property coupled with the lower assessment ratio of fifteen percent (15%) applied to nonpublic service properties. Based upon the testimony presented at trial, the Commission avers that the unit method of valuation used to value public service properties yields different values than the local assessor's determination of cost replacement. Accordingly, the Commission submits that the plaintiffs err in arguing that they would have paid $29,933,602.54 less in property taxes (based on the assumption that the correct assessed value for the plaintiffs was $44,900,403.81) had they been taxed on the same basis as the preferred companies. Rather, the Commission avers that it is impossible to determine the difference between the taxes paid by plaintiffs and the proper amount of taxes absent reappraisal.
Interestingly, both the plaintiffs and the Commission base their arguments in part on Sioux City Bridge Co. v. Dakota County, Neb., 260 U.S. 441, 43 S.Ct. 190, 67 L.Ed. 340 (1923), and the subsequent line of cases. In Sioux City Bridge Co., the Supreme Court considered the appropriate remedy where the systematic under-valuation by state officials of other property in the same class contravenes the constitutional rights of one taxed on the full value of his property. In that case, the plaintiff bridge company complained that the state of Nebraska, through its duly constituted agents (namely, the county assessor and the county board of equalization), improperly *95 executed the Constitution and taxing laws of the state and intentionally and arbitrarily assessed the plaintiff's property at one hundred percent (100%) of its true value in accordance with state law and all other real estate and its improvements in the county at fifty-five percent (55%). The Nebraska Supreme Court held that when property is assessed at its true value and other property in the district is assessed below its true value, the proper remedy is to have the property assessed below its true value raised, rather than to have property assessed at its true value reduced. On writ of certiorari, the United States Supreme Court reversed and remanded, finding as follows:
[S]uch a result as that reached by the Supreme Court of Nebraska is to deny the injured taxpayer any remedy at all because it is utterly impossible for him by any judicial proceeding to secure an increase in the assessment of the great mass of underassessed property in the taxing district. This court holds that the right of the taxpayer whose property alone is taxed at 100 per cent. of its true value is to have his assessment reduced to the percentage of that value at which others are taxed even though this is a departure from the requirement of the statute. The conclusion is based on the principle that where it is impossible to secure both the standard of the true value, and the uniformity and equality required by law, the latter requirement is to be preferred as the just and ultimate purpose of the law. In substance and effect the decision of the Nebraska Supreme Court in this case upholds the violation of the Fourteenth Amendment to the injury of the Bridge Company. We must, therefore, reverse its judgment.
Sioux City Bridge Co., 260 U.S. at 446-447, 43 S.Ct. at 192 (emphasis added). Since the Nebraska Supreme Court did not make a clear finding on the issue of discrimination, the case was remanded to that court for further hearing.
Similarly, in Allegheny Pittsburgh Coal Co. v. County Comm'n of Webster County, W.Va., 488 U.S. 336, 109 S.Ct. 633, 102 L.Ed.2d 688 (1989), the tax assessor for Webster County, West Virginia, valued the plaintiffs' real property from 1975 to 1986 on the basis of its recent purchase price, while other properties not recently conveyed were assessed based on their previous assessments with minor modifications. Each year, the county commission affirmed the assessments, and plaintiffs appealed to the state circuit court. Eventually, a number of these cases were consolidated for consideration. The state circuit court reduced the assessed valuation and ordered the commission to reduce the assessments to the levels recorded in the guidelines issued by the state tax commissioner. The West Virginia Supreme Court of Appeals reversed and remanded, finding that the only remedy available to plaintiffs was an effort to have the assessments on neighboring properties raised. On certiorari, the United States Supreme Court held that the assessments violated the equal protection clause of the Fourteenth Amendment to the United States Constitution. Further, the Supreme Court held that the plaintiffs could not be remitted to the remedy specified by the West Virginia Supreme Court of Appeals:
A taxpayer in this situation may not be remitted by the State to the remedy of seeking to have the assessments of the undervalued property raised. "The [Equal Protection Clause] is not satisfied if a State does not itself remove the discrimination, but imposes on him against whom the discrimination has been directed the burden of seeking an upward revision of the taxes of other members of the class."
*96 Allegheny Pittsburgh Coal Co., 488 U.S. at 346, 109 S.Ct. at 639 (citations omitted). Accordingly, the judgment of the West Virginia Supreme Court of Appeals was reversed and the case was remanded.
In Cumberland Coal Co. v. Bd. of Revision of Tax Assessments in Greene County, Pa., 284 U.S. 23, 52 S.Ct. 48, 76 L.Ed. 146 (1931), the plaintiffs alleged that the valuation placed upon their coal was unjust and discriminatory as the commissioners had assessed all coal in the same township at the same valuation, regardless of the remoteness or accessibility of the said coal to market cost of operation, means of transportation, or difference in value and without due regard to the valuation and assessment of other coal and other classes of real estate in the county. On writ of certiorari, the United States Supreme Court reversed the judgment of the Pennsylvania Supreme Court, which found that the plan of assessment in those cases did not violate the equal protection clause of the Fourteenth Amendment to the United States Constitution. The Court reasoned as follows:
[T]he fact that a uniform percentage of assigned values is used, cannot be regarded as important, if, in assigning the values to which the percentage is applied, a system is deliberately adopted which ignores differences in actual values so that property in the same class as that of the complaining taxpayer is valued at the same figure (according to the unit of valuation, as, for example, an acre) as the property of other owners which has an actual value admittedly higher. Applying the same ratio to the same assigned values, when the actual values differ, creates the same disparity in effect as applying a different ratio to actual values when the latter are the same. If the commissioners, in the instant case, had taken the basis of 100 per cent., instead of 50 per cent. of the assigned values, but had adopted the same method of assessment by which all the coal in a township (aside from active coal) was assessed at the same value an acre, despite well-known and important differences in value, the result would have been an undervaluation of similar coal belonging to other owners, which would have brought the case of the petitioners within the principle of the decisions cited. In such case, if the petitioners' property had been valued at 100 per cent. of its actual value, the like property of the other owners, having a higher actual value, would in effect have been valued at less than 100 per cent. The discrimination is essentially the same, and is equally repugnant to the constitutional right, when both assessments are made on the basis of 50 per cent. of assigned values and differences in actual values are deliberately and systematically disregarded.
Cumberland Coal Co., 284 U.S. at 29-30, 52 S.Ct. at 50-51. Accordingly, the Court found that the plaintiffs were entitled to a readjustment of the assessments of their coal so as to put these assessments upon a basis of equality, with due regard to differences in actual value, with other assessments of the coal of the same class within the tax district.
Louisiana courts have followed the precedent of the federal courts in upholding equality in the assessment of ad valorem taxes. In Bussie v. Long, 286 So.2d 689 (La.App. 1 Cir.1973), writ refused, 288 So.2d 354 (La.1974), taxpayers brought an action to require the Commission to assess all property in the state at actual cash value for ad valorem tax purposes. On remand from the Louisiana Supreme Court, the trial court rendered judgment mandating compliance by the Commission with laws requiring assessment at actual cash value, and the Commission appealed. *97 On appeal, this court held that notwithstanding the repeal of the statewide ad valorem tax, the Commission had the obligation of assessing property for taxation for local tax purposes, of supervising and directing assessments required to be submitted to the Commission by local assessors, and of fixing actual cash value of property within the state. This court reasoned:
It is settled that a taxpayer is entitled to have his property taxed at that percentage of value applicable to others equally and similarly situated, even though statutory law may provide otherwise. The rule is based on the principle that if both the standard of true value and the uniformity and equality required by law cannot be achieved, equality and uniformity is preferred under the law.
Bussie, 286 So.2d at 700 (citation omitted). Under this rationale, this court affirmed the decision of the lower court.
In the case at hand, it is undisputed that certain interstate pipeline companies were being taxed as if they were not public service pipelines in that they were valued by local assessors at depreciated replacement cost and assessed at fifteen percent (15%) of fair market value. The assessment of these preferred companies was in clear violation of Article VII of the Louisiana Constitution and Louisiana statutory law on ad valorem taxation. Under Sioux City Bridge Co. and the subsequent line of federal and state cases, the appropriate remedy where the systematic under assessment by state officials of other property in the same class contravenes the constitutional rights of others taxed on the full value and percentage of their property is to employ the same valuation and assessment methodology as that used to assess the preferred properties. This holds true even in the instance, such as the case at hand, where the valuation and assessment methodology employed for the preferred properties is contrary to state law. Sioux City Bridge Co., 260 U.S. at 446-447, 43 S.Ct. at 192. The ultimate goal is to achieve uniformity and equality.
It should be noted that reassessment in the case at hand does not violate the plaintiffs' due process rights. Following reassessment, the assessors are required, pursuant to La. R.S. 47:1992(A)(1), to prepare a list showing the assessment of immovable and movable property of the affected pipeline companies in and for the parish or district and expose the list daily for inspection by the plaintiffs and other interested parties for a period of fifteen days. Thereafter, the lists as changed by each assessor shall be certified to the board of review within three days in accordance with La. R.S. 47:1992(B).[14] Accordingly, the plaintiffs will have ample opportunity to object, if necessary, to the local assessors' *98 valuations. Therefore, the remedy ordered by the trial court is both just and equitable. Accordingly, we affirm the judgment of the trial court to the extent that the matter was remanded to the Commission with instructions that the Commission require the parish assessors to assess the public service pipelines of the plaintiffs for each of the years at issue and calculate taxes based on fifteen percent (15%) of those assessments.

Commerce Clause
Next, plaintiffs allege that the trial court erred in declining to address their commerce clause challenges. Pursuant to La. R.S. 47:1851(K), any pipeline regulated by the Public Service Commission or the Federal Energy Regulatory Commission is considered a public service property taxpayer and thus subject to assessment by the Commission at twenty-five percent (25%) of the fair market value under Article VII, § 18(B) of the Louisiana Constitution. Intrastate pipeline companies, by contrast, are regulated by the Louisiana Department of Natural Resources pursuant to La. R.S. 30:551(A) and are assessed at fifteen percent (15%) of fair market value under Article VII, § 18(B) of the Louisiana Constitution as "other property." Plaintiffs submit that they presented ample evidence at trial of the close competition between interstate and intrastate natural gas pipeline companies. Plaintiffs argue, therefore, that La. R.S. 47:1851(K), when read in combination with Article IX, § 2(A) of the Louisiana Constitution and La. R.S. 30:551(A), discriminates against interstate natural gas pipeline companies in per se violation of the commerce clause.[15]
Plaintiffs submit that the judgment of the trial court does not adequately remedy violations of the commerce clause. In McKesson Corp. v. Div. of Alcoholic Beverages and Tobacco, Dept. of Business Regulation of Fl., 496 U.S. 18, 40-41, 110 S.Ct. 2238, 2252, 110 L.Ed.2d 17 (1990), wholesale liquor distributors filed suit, challenging the Florida excise tax that gave preferential treatment to beverages that were manufactured from Florida-grown citrus and other agricultural crops and bottled in state. On certiorari, the United States Supreme Court held that if a state penalizes taxpayers for failure to remit their taxes in a timely fashion, thus requiring them to pay first and obtain review later, the due process clause requires that the state afford a meaningful postpayment remedy for taxes paid pursuant to an unconstitutional tax scheme, i.e., a refund of the excess tax or a partial retroactive assessment of tax increases on the favored competitors. In the instant case, plaintiffs argue that under this rationale, only a full refund of all taxes paid under protest can rectify the unconstitutional discrimination to which plaintiffs have been subjected by Louisiana's ad valorem tax scheme.
In response to plaintiffs' appeal, the Commission submits that the trial court was correct in declining to rule on the constitutionality of La. R.S. 47:1851(K). Moreover, the Commission contends that even if the trial court had found a violation of the commerce clause, the remedy would have been the same. Specifically, the Commission argues that a finding that La. *99 R.S. 47:1851(K) is unconstitutional would mean that the plaintiffs would no longer be classified as the owners of "public service property" for ad valorem tax purposes. Accordingly, their assessments based on this classification would be vacated and plaintiffs would be reassessed as owners of nonpublic service property. Since this is exactly the remedy ordered by the trial court, the Commission submits that no harm was suffered by the court's failure to consider the plaintiffs' commerce clause claims.
A court should not reach or determine constitutional issues unless, in the context of a particular case, the resolution of such issues is necessary to decide the case. La. Assoc. Gen. Contractors, Inc. v. New Orleans Aviation Bd., 97-0752, p. 3 (La.10/31/97), 701 So.2d 130, 132; Cameron Parish Sch. Bd. v. ACandS, Inc., 96-0895, p. 5 (La.1/14/97), 687 So.2d 84, 87. "No rule of practice is better settled than `never to anticipate a question of constitutional law in advance of the necessity of deciding it."' Matherne v. Gray Ins. Co., 95-0975, p. 3 (La.10/16/95), 661 So.2d 432, 434 (quoting Communist Party of U.S. v. Subversive Activities and Control Board, 367 U.S. 1, 72, 81 S.Ct. 1357, 1397, 6 L.Ed.2d 625 (1961)).
In this case, the plaintiffs seek refunds for those years in which taxes were paid under protest. To the extent that the plaintiffs may obtain adequate relief through reassessment and refund, the trial court was correct in declining to address the plaintiffs' claim that La. R.S. 47:1851(K) is unconstitutional. Accordingly, we affirm the judgment of the trial court to the extent that the trial court avoided any decision on the constitutionality of La. R.S. 47:1851(K) and (M).

The Party Cast in Judgment
The plaintiffs allege that the trial court improperly designated the Commission as the party owing a refund. Specifically, plaintiffs contend that La. R.S. 47:1856 obligates each affected taxing jurisdiction to issue a credit or refund upon a determination that the assessed valuation is less than the amount set by the Commission. In this sense, plaintiffs submit that the judgment should be revised to provide that refunds are due from each of the affected taxing jurisdictions, rather than the Commission.
It should be noted that the Commission supports this position. In its answer to the appeal, the Commission submits that the protested tax payments at issue in the underlying suits are in the possession of the parochial and municipal tax collectors to whom they were paid. The Commission suggests, therefore, that it has neither the financial nor jurisdictional ability to issue refunds. Accordingly, to the extent the judgment imposes a financial obligation on the Commission, the Commission submits that the judgment should be modified to recognize that its duty to issue refunds is to be accomplished through a change in the tax rolls under La. R.S. 47:1837.
Although the Commission is the proper party defendant, the local assessors are the parties responsible for the refunds owed plaintiffs. To the extent that the local assessors, not the Commission, are in actual possession of the taxes paid under protest, we hereby amend the judgment to reflect that the Commission shall cause a refund to issue through the modification of the tax rolls.

Refund Deadline
The judgment appealed from mandates that the Commission issue to all plaintiffs a full refund, plus interest, of the difference between the amounts paid for each year and the reassessed amount no later *100 than September 30, 2005, within six months following the date of judgment. The Commission has answered the appeal and prayed that the judgment be modified to extend the deadline for completion of reassessment to six months following finality of judgment. Due to the delays occasioned by this appeal, we find that an extension of the deadline for issuance of refunds is warranted. Accordingly, we hereby amend the judgment to provide that the deadline for completion of reassessment is six months from the date the judgment becomes final.

The Commission's Claim for Frivolous Appeal
In its answer to the plaintiffs' appeal, the Commission has made a claim for damages for frivolous appeal. The imposition of damages for a frivolous appeal is regulated by La.Code Civ. P. art. 2164. The courts have been very reluctant to grant damages under this article, as it is penal in nature and must be strictly construed. Guarantee Sys. Const. & Restoration, Inc. v. Anthony, 97-1877, p. 13 (La. App. 1 Cir. 9/25/98), 728 So.2d 398, 405, writ denied, 98-2701 (La.12/18/98), 734 So.2d 636. Furthermore, in order to assess damages for frivolous appeal, it must appear that the appeal was taken solely for the purpose of delay or that appellate counsel does not sincerely believe in the view of law he advocates. Cortes v. Lynch, XXXX-XXXX, p. 14 (La.App. 1 Cir. 5/9/03), 846 So.2d 945, 954. When an appellee asks that the judgment be amended, damages for a frivolous appeal will not be allowed. Parker, Seale & Kelton v. Messina, 214 La. 203, 36 So.2d 724, 728 (1948).
In this case, the Commission has answered the plaintiffs' appeal and prayed that the judgment appealed from be modified to extend the deadline for completion of reassessment to six months following finality of judgment and to provide for the issuance of refunds in accordance with statutory provisions governing modification of tax rolls. To the extent that the Commission has answered the appeal and requested modification of the judgment, the Commission admits that the judgment is at least partially in error. Further, there is no indication that counsel for the plaintiffs brought this appeal to delay litigation or does not have a reasoned belief in the merits of the appeal. Accordingly, we find that damages for frivolous appeal are not warranted.

CONCLUSION
For the above and foregoing reasons, we hereby affirm the judgment of the trial court to the extent that declaratory judgment was rendered in favor of plaintiffs, finding that the actions of the Commission in the administration of Louisiana's ad valorem tax scheme, as it pertains to plaintiffs' public service pipelines, have violated the equal protection and due process clauses of the Louisiana and United States Constitutions, and to the extent that the trial court declined to make any determination as to the constitutionality of La. R.S. 47:1851(K) and (M). We further affirm the judgment of the trial court to the extent that the matter was remanded to the Commission with instructions that the Commission require the parish assessors to assess the public service pipelines of the plaintiffs for each of the years at issue and that taxes be calculated based on fifteen percent (15%) of those assessments. The judgment is hereby amended to provide that the Commission shall cause to issue to plaintiffs a full refund, plus interest, of the taxes paid under protest no later than six months from the date this judgment is final, pursuant to its authority under La. R.S. 47:1837(C)(5) to direct the local tax collectors to correct the assessments on the tax rolls. The Commission's claim for *101 damages for frivolous appeal is hereby denied. All costs associated with this appeal shall be paid by the plaintiffs.
AMENDED IN PART, AND AS AMENDED, AFFIRMED. DAMAGES FOR FRIVOLOUS APPEAL DENIED.
NOTES
[1] The relevant portions of La. R.S. 47:1851 provide as follows:

K. "Pipeline company" means any company that is engaged primarily in the business of transporting oil, natural gas, petroleum products, or other products within, through, into, or from this state, and which is regulated by (1) the Louisiana Public Service Commission, (2) the Interstate Commerce Commission, or (3) the Federal Power Commission, as a "natural gas company" under the Federal Natural Gas Act, 15 U.S.C. §§ 717-717w, because that person is engaged in the transportation of natural gas in interstate commerce, as defined in the Natural Gas Act.
. . . .
M. "Public service properties" means the immovable, major movable, and other movable property owned or used but not otherwise assessed in this state in the operations of each airline, electric membership corporation, electric power company, express company, gas company, pipeline company, railroad company, telegraph company, telephone company and water company. For each barge line, towing company or private car company, only the major movable property owned or used but not otherwise assessed in this state in interstate or interparish operations shall be considered as public service property.
[2] La. Const. art. VII, § 18(B) provides:

(B) Classification. The classifications of property subject to ad valorem taxation and the percentage of fair market value applicable to each classification for the purpose of determining assessed valuation are as follows:

Classifications Percentages
1. Land 10%
2. Improvements for residential
 purposes 10%
3. Electric cooperative properties,
 excluding land 15%
4. Public service properties, excluding
 land 25%
5. Other property 15%

The legislature may enact laws defining electric cooperative properties and public service properties.
[3] At trial, Vergie Booty, Director of Public Utility and Audits for the Commission, testified that the Commission did not appraise and assess the properties of Acadian Gas Pipeline Company, Louisiana Intrastate Gas Company, Cypress Gas Pipeline, Tuscaloosa Pipeline Company, Bridgeline, CLE, Harvest Pipeline, Atchafalaya Pipeline, Plains Marketing, Unocal, XPLOR Energy, Union Texas Petroleum Pipeline, Bayou City Pipeline, and Araxas Exploration during the years 1994 through 2003.
[4] ANR Pipeline Company paid a portion of its ad valorem taxes under protest for each tax year from 1994 through 2003; Tennessee Gas Pipeline Company and Southern Natural Gas Company paid a portion of their ad valorem taxes under protest for each tax year from 2000 through 2003; High Island Offshore System, L.L.C., paid a portion of its ad valorem taxes under protest for each tax year from 2000 through 2002; UT Offshore System, L.L.C., paid a portion of its ad valorem taxes under protest for each tax year for 2000 and 2001; and Stingray Pipeline Company, L.L.C. paid a portion of its ad valorem taxes under protest for 2000.
[5] Named as defendants in each of the actions were the Commission, the Chairman of the Commission, and its two other members.
[6] It should be noted that the Commission has argued in its responsive brief to plaintiffs' appeal that this matter involves the calculation of damages and the decision of the trial court should not be disturbed on appeal absent abuse of discretion. However, we find that this appeal involves the interpretation of Louisiana law on ad valorem taxation, and therefore, is subject to a de novo standard of review.
[7] Pursuant to La. R.S. 47:1851(M), public service properties include the immovable, major movable, and other movable property owned or used but not otherwise assessed in this state in the operations of each railroad company.
[8] Louisiana Revised Statutes 47:1853(B)(1) provides as follows:

B. (1) In appraising public service properties, the Louisiana Tax Commission shall:
(a) Employ all of the following nationally recognized techniques of appraisal, where applicable, to best determine fair market value:
(i) The market approach.
(ii) The cost approach.
(iii) The income approach.
(b) Assign such weight to each approach as is appropriate to best determine fair market value.
[9] Louisiana Revised Statutes 13:4231 provides as follows:

Except as otherwise provided by law, a valid and final judgment is conclusive between the same parties, except on appeal or other direct review, to the following extent:
(1) If the judgment is in favor of the plaintiff, all causes of action existing at the time of final judgment arising out of the transaction or occurrence that is the subject matter of the litigation are extinguished and merged in the judgment.
(2) If the judgment is in favor of the defendant, all causes of action existing at the time of final judgment arising out of the transaction or occurrence that is the subject matter of the litigation are extinguished and the judgment bars a subsequent action on those causes of action.
(3) A judgment in favor of either the plaintiff or the defendant is conclusive, in any subsequent action between them, with respect to any issue actually litigated and determined if its determination was essential to that judgment.
[10] In Humphrey, the fourth circuit court of appeal considered whether determinations of an administrative agency can serve as the basis of an objection of res judicata where no appeal has been taken. In that case, the court reasoned that the doctrine should be narrowly applied to those instances where the agency has acted in a quasi-judicial capacity and where the parties have been given proper notice and ample opportunity to be heard. Humphrey, 97-1742 at pp. 3-4, 709 So.2d at 335.
[11] Vergie Booty, Director of Public Utility and Audits for the Commission, testified that the Commission appraised the plaintiffs' properties at fair market value for each of the tax years at issue.
[12] Louisiana Revised Statutes 47:1853(B)(2) provides:

(2) However, all public service properties of the same nature and kind shall be appraised in the same manner. The appraised value of all lands owned by the company in this state shall be deducted from the total appraised value of the public service properties and shall be assessed by the Louisiana Tax Commission and shown as a separate item on the tax roll.
[13] Article VII, § 3 of the Louisiana Constitution provides as follows:

(A) The legislature shall prohibit the issuance of process to restrain the collection of any tax. It shall provide a complete and adequate remedy for the prompt recovery of an illegal tax paid by a taxpayer.
[14] Louisiana Revised Statutes 47:1992, as it currently reads, provides as follows:

A. (1) After each assessor has prepared and made up the lists showing the assessment of immovable and movable property in and for his parish or district, his lists shall be exposed daily for inspection by the taxpayers and other interested persons for the period provided for in Subsection G of this Section. Each assessor shall give notice of such exposure for inspection in accordance with rules and regulations established by the Louisiana Tax Commission.
. . . .
B. After the lists of each assessor have been exposed for inspection for the period provided for in Subsection G of this Section, the lists as changed by each assessor shall be certified to the board of review within three days, which board shall conduct public hearings for all persons or their representatives desiring to be heard on the assessments of immovable and movable property. Notice of such public hearings shall be given by each assessor in accordance with rules and regulations established by the tax commission.
[15] Article IX, § 2(A) of the Louisiana Constitution provides:

Section 2. (A) Public Policy; Regulation. Natural gas is declared to be affected with a public interest. Notwithstanding any provision of this constitution relative to the powers and duties of the Public Service Commission, the legislature shall provide by law for regulation of natural gas by the regulatory authority it designates. It may designate the Public Service Commission as the regulatory authority.