997 So.2d 92 (2008)
ANR PIPELINE COMPANY
v.
LOUISIANA TAX COMMISSION, Malcolm B. Price, Jr., Chairman of the Louisiana Tax Commission, Kenneth P. Naquin, Jr., Member of the Louisiana Tax Commission, and Russel R. Gaspard, Member of the Louisiana Tax Commission.
ANR Pipeline Company
v.
Louisiana Tax Commission, Malcolm B. Price, Jr., Chairman of the Louisiana Tax Commission, Kenneth P. Naquin, Jr., Member of the Louisiana Tax Commission, and Russel R. Gaspard, Member of the Louisiana Tax Commission.
Tennessee Gas Pipeline Company
v.
Louisiana Tax Commission, Malcolm B. Price, Jr., Chairman of the Louisiana Tax Commission, Kenneth P. Naquin, Jr., Member of the Louisiana Tax Commission, and Russel R. Gaspard, Member of the Louisiana Tax Commission.
Southern Natural Gas Company
v.
Louisiana Tax Commission, Malcolm B. Price, Jr., Chairman of the Louisiana Tax Commission, Kenneth P. Naquin, Jr., Member of the Louisiana Tax Commission, and Russel R. Gaspard, Member of the Louisiana Tax Commission.
ANR Pipeline Company
v.
Louisiana Tax Commission, Malcolm B. Price, Jr., Chairman of the Louisiana Tax Commission, Kenneth P. Naquin, Jr., Member of the Louisiana Tax Commission, and Russel R. Gaspard, Member of the Louisiana Tax Commission.
Tennessee Gas Pipeline Company
v.
Louisiana Tax Commission, Malcolm B. Price, Jr., Chairman of the Louisiana Tax Commission, Kenneth P. Naquin, Jr., Member of the Louisiana Tax Commission, and Russel R. Gaspard, Member of the Louisiana Tax Commission.
Southern Natural Gas Company
v.
Louisiana Tax Commission, Malcolm B. Price, Jr., Chairman of the Louisiana Tax Commission, Kenneth P. Naquin, Jr., Member of the Louisiana Tax Commission, and Russel R. Gaspard, Member of the Louisiana Tax Commission.
Southern Natural Gas Company
v.
Louisiana Tax Commission, Malcolm B. Price, Jr., Chairman of the Louisiana Tax Commission, Kenneth P. Naquin, Jr., Member of the Louisiana Tax Commission, and Russel R. Gaspard, Member of the Louisiana Tax Commission.
ANR Pipeline Company
v.
Louisiana Tax Commission, Malcolm B. Price, Jr., Chairman of the Louisiana Tax Commission, Kenneth P. Naquin, Jr., Member of the Louisiana Tax Commission, and Russel R. Gaspard, Member of the Louisiana Tax Commission. *93 
Tennessee Gas Pipeline Company
v.
Louisiana Tax Commission, Malcolm B. Price, Jr., Chairman of the Louisiana Tax Commission, Kenneth P. Naquin, Jr., Member of the Louisiana Tax Commission, and Russel R. Gaspard, Member of the Louisiana Tax Commission.
Tennessee Gas Pipeline Company
v.
Louisiana Tax Commission, Russel R. Gaspard, Chairman of the Louisiana Tax Commission, Kenneth P. Naquin, Jr., Member of the Louisiana Tax Commission, and Jewette Farley, Member of the Louisiana Tax Commission.
ANR Pipeline Company
v.
Louisiana Tax Commission, Russel R. Gaspard, Chairman of the Louisiana Tax Commission, Kenneth P. Naquin, Jr., Member of the Louisiana Tax Commission, and Jewette Farley, Member of the Louisiana Tax Commission.
Southern Natural Gas Company
v.
Louisiana Tax Commission, Russel R. Gaspard, Chairman of the Louisiana Tax Commission, Kenneth P. Naquin, Jr., Member of the Louisiana Tax Commission, and Jewette Farley, Member of the Louisiana Tax Commission.
ANR Pipeline Company
v.
Louisiana Tax Commission, Jerry J. Larpenter, Terrebonne Parish Tax Collector, and Gene P. Bonvillain, Terrebonne Parish Assessor.
ANR Pipeline Company
v.
Louisiana Tax Commission, Richard Fewell, Ouachita Parish Tax Collector, and Rich Bailey, Ouachita Parish Assessor.
Nos. 2008 CA 1148, 2008 CA 1149, 2008 CA 1150, 2008 CA 1151, 2008 CA 1152, 2008 CA 1153, 2008 CA 1154, 2008 CA 1155, 2008 CA 1156, 2008 CA 1157, 2008 CA 1158, 2008 CA 1159, 2008 CA 1160, 2008 CA 1161, 2008 CA 1162.
Court of Appeal of Louisiana, First Circuit.
October 17, 2008.
Rehearing Denied December 3, 2008.
*94 Hilton S. Bell, Heather Landry, James K. Irvin, Angela W. Adolph, New Orleans, LA, for Plaintiffs-2nd Appellants, ANR Pipeline Company, Tennessee Gas Pipeline Company and Southern Natural Gas Company.
Robert D. Hoffman Jr., Covington, LA, for Defendant-Appellee, Louisiana Tax Commission.
*95 Brian A. Eddington, Baton Rouge, LA, for Defendants-1st Appellants, Gene P. Bonvillian, Assessor of Terrebonne Parish, and Rich Bailey, Assessor of Ouachita Parish.
Before PETTIGREW, McDONALD, and HUGHES, JJ.
PETTIGREW, J.
In these consolidated cases, the plaintiffs filed a motion with the trial court seeking to enforce the judgment previously rendered by this court in ANR Pipeline Co. v. Louisiana Tax Com'n, XXXX-XXXX (La.App. 1 Cir. 9/7/05), 923 So.2d 81, writ denied, 2005-2372 (La.3/17/06), 925 So.2d 547, cert. denied, 549 U.S. 822, 127 S.Ct. 157, 166 L.Ed.2d 38 (2006) ("ANR VI"), concerning the reassessment of the plaintiffs' public service pipelines and the deadlines for refunds of the difference between the amounts paid during the years 1994 through 2003 ("the tax years at issue") and the reassessed values. The trial court rendered judgment on August 6, 2007, attempting to follow this court's intent as set forth in our ruling in ANR VI. The instant appeals followed. For the reasons set forth below, we affirm in part, reverse in part, and remand.

FACTS AND PROCEDURAL HISTORY
Even prior to this court's decision in ANR VI, the parties to this litigation were no strangers to this court. In fact, the history of this case dates back to October 2000, when the first appeal in this case was lodged with our court. In ANR Pipeline Co. v. Louisiana Tax Com'n, 2000-2251 (La.App. 1 Cir. 12/22/00), 774 So.2d 1261, writ denied, XXXX-XXXX (La.4/20/01), 790 So.2d 633, we considered that very appeal and issued a ruling concerning ANR's challenge of the ad valorem taxes assessed against its public service pipelines. There have been numerous other appeals and writ applications in this matter since that date, and the underlying facts of this case are well known to both this court and the parties herein. However, due to the complex nature of this protracted litigation, a brief review of the procedural history that has brought us to this point is warranted and will be helpful in understanding the court's analysis that follows.
ANR Pipeline Company, Tennessee Gas Pipeline Company, and Southern Natural Gas Company ("plaintiffs")[1] provide natural gas transportation, storage, and balancing services in Louisiana and in interstate commerce and are regulated by the Federal Energy Regulatory Commission pursuant to the Natural Gas Act, 15 U.S.C. § 717, et seq. Plaintiffs each own interstate natural gas transmission pipelines in Louisiana, which properties are classified and taxed as public service properties under La. R.S. 47:1851(K) and (M).[2]
*96 During the tax years at issue, a number of intrastate natural gas, oil, and other liquid pipeline companies were regulated by the Louisiana Public Service Commission as provided in La. R.S. 30:551(A) and qualified as public service companies under La. R.S. 47:1851(K). The pipelines of these companies, however, were assessed by local assessors at fifteen percent (15%) of fair market value, while the public service properties of plaintiffs were assessed at twenty-five percent (25%) of fair market value.
For each tax year in question, plaintiffs paid their ad valorem taxes under protest. Specifically, plaintiffs challenged that portion of taxes assessed in excess of fifteen percent (15%) of fair market value. Plaintiffs then filed individual suits against the Louisiana Tax Commission (the "Commission") for declaratory judgment and for refunds of the taxes paid under protest. Plaintiffs argued that the assessed values of their properties were calculated at twenty-five percent (25%) of fair market value, while tine assessed values of other pipeline public service taxpayers that fall within the statutory definition of pipeline companies were calculated at fifteen percent (15%) of fair market value. Plaintiffs asserted that this disparate treatment violated the uniformity requirement of the Louisiana Constitution, the equal protection and due process clauses of the Louisiana and United States Constitutions, and the commerce clause of the United States Constitution. Plaintiffs also alleged that La. R.S. 47:1851(K) is unconstitutional. These suits were consolidated for trial.
Following a bench trial in early 2005, the trial court rendered declaratory judgment in favor of the plaintiffs, finding that the actions of the Commission in the administration of Louisiana's ad valorem tax scheme, as it pertained to plaintiffs' public service pipelines, violated the equal protection and due process clauses of the Louisiana and United States Constitutions. The trial court pretermitted decision on the constitutionality of La. R.S. 47:1851(K) and (M) and remanded the matter to the Commission with instructions that the Commission require the parish assessors to assess the public service pipelines of the plaintiffs for each of the tax years at issue and calculate taxes based on fifteen percent (15%) of those assessments. The trial court further ordered the Commission to issue plaintiffs a full refund, plus interest, of the difference between the amounts paid for each year and the reassessed amount no later than September 20, 2005. Plaintiffs appealed this decision, which resulted in our decision in ANR VI.
In ANR VI, this court affirmed the declaratory judgment rendered in favor of plaintiffs, both as to the constitutional violations and as to the remedy involving the parish assessors and the reassessment of the plaintiffs' public service pipelines for tax purposes. With regard to the refunds, if any, that might be issued following reassessment, this court noted as follows:

*97 The judgment appealed from mandates that the Commission issue to all plaintiffs a full refund, plus interest, of the difference between the amounts paid for each year and the reassessed amount no later than September 30, 2005, within six months following the date of judgment. The Commission has answered the appeal and prayed that the judgment be modified to extend the deadline for completion of reassessment to six months following finality of judgment. Due to the delays occasioned by this appeal, we find that an extension of the deadline for issuance of refunds is warranted. Accordingly, we hereby amend the judgment to provide that the deadline for completion of reassessment is six months from the date the judgment becomes final.
ANR VI, XXXX-XXXX at 31, 923 So.2d at 99-100.
When the Louisiana Supreme Court denied plaintiffs' writ application in ANR VI, our decision therein became final, prompting a series of orders by the Commission relating to the reassessment of plaintiffs' properties by the various parish assessors. Pursuant to the Commission's orders, the parish assessors began the reassessments. Although there is some dispute as to how many were accomplished within the six month deadline provided for in ANR VI, it is clear that many were completed. According to the record, while reassessment resulted in a decrease in taxes in some parishes, it resulted in an increase in taxes in other parishes.[3]
In response to the reassessments, plaintiffs lodged 359 protests with the various parish Boards of Review challenging the correctness of the reassessments. After receiving a number of adverse determinations from the parish Boards of Review, plaintiffs appealed the assessments to the Commission.[4] Shortly after lodging these appeals with the Commission, plaintiffs filed a motion to enforce judgment with the trial court alleging that by failing to timely complete the reassessment and refund process, the Commission had lost jurisdiction to conduct any further proceedings in this matter. Thus, plaintiffs asserted that they were "entitled to have their tax assessments calculated by [the trial court] using a 15% assessment ratio applied to the only fair market values that are currently extant, namely the undisputed fair market values previously determined by the Commission." The parish assessors subsequently filed a petition of intervention in support of the Commission and an opposition to plaintiffs' motion to enforce judgment. In response thereto, plaintiffs objected to the petition of intervention on the grounds that it did not state a cause of action. In the alternative, plaintiffs moved that the intervention be dismissed as untimely. These matters, along with the motion to enforce judgment, *98 were brought for hearing before the trial court on June 13, 2007.
With regard to the no cause of action objection and the intervention, the trial court found that the parish assessors had no cause of action to intervene as the matter was an on-going case that had already been through adjudication. Therefore, the trial court maintained the exception and dismissed, with prejudice, the petition of intervention filed by the parish assessors. The trial court then heard testimony and argument from counsel concerning the motion to enforce judgment. Thereafter, on August 6, 2007, the trial court rendered judgment, providing, in pertinent part, as follows:
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the plaintiffs' Motion to Enforce Judgment seeking an adjudication that the Louisiana Tax [C]ommission's jurisdiction to continue its conduct the re-assessment process, including all appeals to the Louisiana Tax Commission, expired on September 17, 2006, and that the valuations by the Louisiana Tax Commission of plaintiffs' public service property are to be used for the purpose of determining the amount of refunds of ad valorem property taxes paid under protest, is DENIED in part, and, after all refunds of ad valorem property taxes paid under protest, plus interest thereon, have been received by the plaintiffs as set forth below, the Louisiana Tax Commission may proceed to hear the plaintiffs' appeals from the re-assessment of their public services properties by Parish and District Assessors.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the plaintiffs were entitled to an immediate refund of all ad valorem property taxes paid under protest as of September 17, 2006, and the Louisiana Tax Commission shall immediately cause to issue to plaintiffs full refunds of all ad valorem property taxes paid by plaintiffs under protest for the tax years 1994 through 2003 for ANR Pipeline Company and for the tax years 2000 through 2003 (Orleans Parish 2001 through 2004) for Tennessee Gas Pipeline Company and Southern Natural Gas Company, plus interest thereon as provided by law.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that plaintiffs' Motion to Enforce Judgment is GRANTED in part in that, if the re-assessment of plaintiffs' public service property was not completed by September 17, 2006, assessors are barred from re-assessing plaintiffs' public service property and shall not participate in any further proceedings in connection therewith; such Assessors and the Louisiana Tax Commission shall not re-assess plaintiffs' public service property for the tax years 1994 through 2003 (Orleans Parish 2001 through 2004), and the payment of refunds as ordered above shall be full and final.
It is from this judgment that the assessors appealed, assigning the following specifications of error:
1. The trial court erred in holding that the plaintiffs were entitled to a full refund of all ad valorem property taxes paid under protest and in ordering the Louisiana Tax Commission to immediately cause to issue to plaintiffs full refunds of such taxes.
2. The trial court erred in holding that "the payment of refunds as ordered above shall be full and final" in each instance in which reassessment was not completed by September 17, 2006 and in holding that any Assessor who failed to complete reassessment by that deadline is "barred from re-assessing plaintiffs' public service property and shall not *99 participate in any further proceedings in connection therewith."
3. The trial court erred in holding that the Tax Commission could not hear the plaintiffs' appeals from the [reassessment] of their public service properties by Assessors until after the plaintiff pipelines had received a full refund of taxes paid under protest.
Plaintiffs answered the assessors' appeal, presenting the following issues for our review and consideration:
1. Whether the trial court erred in failing to enforce this Court's Judgment that required all proceedings, including appeals and the issuance of refunds of taxes paid under protest, be completed on or before September 17, 2006.
2. Whether the trial court erred in creating a two-step process in which the ultimate outcome could be the imposition of additional taxes and ignoring this Court's time limits rather than ordering the immediate and unconditional payment of full refunds, plus interest.
3. Whether the trial court properly denied the parish assessors' intervention.
4. Whether the parish assessors have standing to appeal the remaining matters addressed in the underlying Judgment.
In response to plaintiffs' appeal, the assessors filed a "Declinatory Exception Of Lack Of Subject Matter Jurisdiction/Motion To Strike Answer To Appeal," arguing that plaintiffs were seeking declaratory relief that was "outside the scope of this appeal." The assessors specifically prayed for the dismissal of plaintiffs' request that "the judgment appealed from be modified to provide that ... [t]he scope of the revaluation and reassessment proceedings is to determine the amount of the refund due to plaintiffs/appellees, and that additional taxes may not be imposed as a result thereof."[5]

TRIAL COURT'S DISMISSAL OF ASSESSORS' INTERVENTION/ASSESSORS' STANDING TO APPEAL
As previously indicated, the trial court dismissed, with prejudice, the assessors' petition of intervention. The trial court found that the assessors had no cause of action to intervene as the matter was an on-going case that had already been through adjudication. On appeal, plaintiffs contend that the assessors' intervention was properly disallowed and that the assessors lack standing to appeal the other matters addressed in the underlying judgment. In response, the assessors point out that subsequent to the entry of the judgment dismissing their petition of intervention but prior to the lodging of their motion for appeal, they were joined as parties in this matter on plaintiffs' motions to consolidate other suits in which the assessors were named as defendants. Thus, citing La.Code Civ. P. art. 2082, the assessors argue that plaintiffs' joinder of them as parties vested them with the same absolute and unrestricted right of appeal enjoyed by any other party.[6]
Louisiana Code of Civil Procedure article 1091, authorizing interventions by *100 third persons in a pending action, provides:
A third person having an interest therein may intervene in a pending action to enforce a right related to or connected with the object of the pending action against one or more of the parties thereto by:
(1) Joining with plaintiff in demanding the same or similar relief against the defendant;
(2) Uniting with defendant in resisting the plaintiffs demand; or
(3) Opposing both plaintiff and defendant.
In Mike M. Marcello, Inc. v. Louisiana Gaming Control Bd., XXXX-XXXX, pp. 4-5 (La.App. 1 Cir. 5/6/05), 903 So.2d 545, 548, this court reviewed the jurisprudential requirements for intervention, noting as follows:
It is well settled by jurisprudence that the requirements for intervention are twofold: the intervenor must have a justiciable interest in, and connexity to, the principal action, and the interest must be so related or connected to the facts or object of the principal action that a judgment on the principal action will have a direct impact on the intervener's rights. A "justiciable interest" is defined as "the right of a party to seek redress or a remedy against either [the] plaintiff or defendant in the original action or both, and where those parties have a real interest in opposing it." The right, if it exists, must be so related or connected to the facts or object of the principal action that a judgment on the principal action will have a direct impact on the intervenor's rights. [Citations omitted.]
Pursuant to La.Code Civ. P. art. 1031, an intervention is an incidental demand. The time at which an incidental demand may be filed is governed by La.Code Civ. P. art. 1033, which provides, in pertinent part, as follows: "An incidental demand may be filed without leave of court at any time up to and including the time the answer to the principal demand is filed. An incidental demand may be filed thereafter, with leave of court, if it will not retard the progress of the principal action...." In providing that an incidental demand may be filed after answer to the principal demand is filed, with leave of court, if the filing will not retard the progress of the principal demand, Article 1033 obviously is based upon the assumption that an incidental demand will never be filed after trial on the merits is conducted, as it is fundamental to our scheme of procedure that there must be notice prior to trial. Cook v. Matherne, 432 So.2d 1039, 1041 (La.App. 1 Cir.1983). In Van Lieu v. Winn-Dixie of Louisiana, Inc., 446 So.2d 1362, 1366, (La.App. 1 Cir.1984), this court concluded that "[a]n intervention may be filed only while suit is pending and before judgment on the main demand." See also Louisiana Power & Light Co. v. Charpentier, 165 So.2d 614, 615 (La.App. 1 Cir.1964); General Motors Acceptance Corp. v. Jordan, 65 So.2d 627, 629 (La. App. 1 Cir.1953).
In the instant case, it is clear from the record before us that the assessors' intervention was not filed until long after the judgment on the main demand. Thus, the trial court's dismissal of the petition of intervention was not in error. Accordingly, we affirm the judgment of the trial court to the extent that it maintained plaintiffs' exception raising the objection of no cause of action and dismissed the assessors' petition of intervention. However, our inquiry does not end here as we need to consider whether the assessors have standing to appeal the remaining matters addressed in the underlying judgment.
Louisiana Code of Civil Procedure article 2086 provides that "[a] person *101 who could have intervened in the trial court may appeal, whether or not any other appeal has been taken." The object of an appeal is to give an aggrieved party recourse for the correction of a judgment, and such right is extended not only to the parties to the action in which the judgment is rendered, but also to a third-party when such party is allegedly aggrieved by the judgment. Thus, there is a right to prosecute an appeal if the intervenor would have had the right to intervene in the underlying proceedings. Mike M. Marcello, Inc., XXXX-XXXX at 4, 903 So.2d at 547-548.
In the case sub judice, there is no doubt that the assessors have a justiciable right related to the principal action, i.e., the reassessment of plaintiffs' public service pipelines. As this court acknowledged in ANR VI, the assessors are the parties ultimately responsible for the refunds owed plaintiffs. ANR VI, XXXX-XXXX at 30, 923 So.2d at 99. Thus, the assessors clearly could have intervened in the underlying proceedings; they simply failed to do so in a timely fashion. However, this procedural error by the assessors does not affect their right to prosecute the instant appeal.[7]Mike M. Marcello, Inc., XXXX-XXXX at 4, 903 So.2d at 547-548. Thus, contrary to plaintiffs' argument herein, the assessors clearly have standing to appeal the trial court's August 6, 2007 judgment.

INTERPRETATION OF ANR VI AS IT RELATES TO REASSESSMENTS AND REFUNDS
In the instant appeal, the assessors argue that the August 6, 2007 judgment "made a mockery" of this court's ruling in ANR VI and prevented the reassessment of plaintiffs' property from continuing "[b]y declaring that the plaintiffs were entitled to a full refund of taxes paid under protest and ordering that the Commission cannot hear the appeals challenging the correctness of reassessment until after plaintiffs receive refunds." (Emphasis in original.) Specifically, the assessors maintain:
The glaring error of the trial court's ruling is readily disclosed by review of the ... ruling in ANR VI, which expressly held that plaintiffs were not entitled to a refund of taxes paid under protest and instead ordered that the Assessors were to reassess plaintiffs' property, with taxes to be recalculated at 15% of the "new" values. [Emphasis in original.]
To the contrary, plaintiffs assert that the trial court erred in not enforcing the six-month time limitation set by this court in ANR VI and in failing to require that all proceedingsreassessments by the assessors, appeals to the Boards of Review and the Commission, and issuance of the refundsbe completed within the six-month period. Plaintiffs continue the argument regarding the refund process, noting as follows:
Because the Commission exceeded the limited time period to complete the refund proceedings ordered by the trial court and approved by this Court, it no longer had jurisdiction to conduct any *102 proceedings to determine the amount of refunds for any parish. Accordingly, Plaintiffs are entitled to have their refunds for the relevant years based on 15% of the fair market values of their public service property as determined by the Commission as of September 17, 2006, the last day of the six-month period. The difference between the taxes based on an assessment at 15% of fair market value as determined by the Commission and the taxes based on the assessment at 25% of that fair market value, plus interest, must be refunded to Plaintiffs immediately.
Plaintiffs also argue that the trial court erred in creating a two-step refund process and stating that the ultimate outcome of the reassessment process could be the submission of new tax bills to collect additional taxes. Plaintiffs contend there was nothing in ANR VI that warranted the two-step approach for the remedy phase of this litigation that was discussed by the trial court during the hearing on the motion to enforce judgment as follows:
THE COURT: ... Clearly, in the body of the opinion by the first circuit, on page 31, it states that, accordingly, we hereby amend the judgment to provide that the deadline for completion of reassessment is six months from the date the judgment becomes final, but then in the conclusion, they state, the judgment is hereby amended to provide that the Commission shall cause to issue plaintiffs a full refund, plus interest of the taxes paid under protest no later than six months from the date the judgment is final pursuant to its authority. I guess the question is one of, how did the first circuit intend that to be accomplished? Did they intend it for the Commission to give all the moneys paid in protest back, and then there be a lapse period between the six months when the new calculation was done and when the finality of the payment decisions were made? Do you see what I'm saying? Clearly, to me, the first circuit is very clear that it's two distinct issues to them in their mind. Pay back what you have in your coffers that they paid under protest within six months of the finality of this, and then the reassessment had to also have been done within six months, in which case they could either bethe taxes would be paid or paid under protest. So to the extent that the Commission has not refunded am I correct that the Commission has not refunded all of the
MR. BELL: That's correct, your Honor.
THE COURT: To the extent it was not refunded, it must be refunded. To the extent that y'all have not yet paid, you need to pay on the assessed or pay it under protest under the reassessed. I think that was the intent of the first circuit. I know you're
MR. BELL: You're asking us to pay $19 million under protest?
THE COURT: Yes, sir. I think it's clear what they're saying is, the Commission, give back the money paid under protest because it was improperly calculated using the wrong system, and that thethat you are notI'm not saying at the end of the day you may not get your $19 million back, but I'm saying, you've got to follow the rules.
MR. BELL: I'm willing to follow the rules, your Honor, but the'let'sthe reassessment, in a number of cases, were not completed in six months.
THE COURT: Well, I understand that.
MR. BELL: What is our remedy?
THE COURT: Well, it seems to me you get your money back from them and you don't have to pay your tax until you get the reassessment. Am I missing something? *103 If you haven't been assessed for that time period, you don't have a tax bill yet.
MR. BELL: We don't have a
THE COURT: And the Commission has to give you your money back that you paid under protest, according to the first circuit. Seems to me like you're holding the cash.
MR. BELL: We haven't received cash, your Honor.
THE COURT: I understand, that's because they interpreted the judgment a different way. That's why we're sitting here today, but clearly to me
MR. BELL: If your honorif your honor, if you're saying that we need to get all of our money back, that's fine, and we'll deal with the tax bills as they come due. Yes, we'll take the money now.
THE COURT: Well, I figured you would. I didn't think you would be complaining about that, but it seems to me you have to read the two things together, and one of them sayswhere is my page?
MR. BELL: But the reassessment doesn't mean that you owe an additional tax. What it does
THE COURT: No, sir, it doesn't mean you owe any tax, but if they are to pay back everything you paid under protest, they are paying back to you that for which you received a tax bill previously, right?
MR. BELL: That's correct.
THE COURT: All right. You get reassessed, you're going to get a new tax bill for the 1994 through 2003 or whatever this covered for ANR and different years for the other folks, right? Then you're going to have to pay those taxes upon receipt.
MR. BELL: All right, your honor. I understand what you're saying.
THE COURT: To the extent that the assessors are late in getting you your assessments, it seems to me you don't owe them any money yet.
MR. BELL: I agree with that, your honor, at all.
THE COURT: I mean, I know the State doesn't like this idea. The assessors are really going to be pissed off at it, but it's their fault for not doing things in the proper time under the order of the first circuit, and the supreme court denied writs on all this, didn't they?
MR. BELL: Yes, your honor.
THE COURT: You're stuck with what the first circuit says, and the first circuit clearly says in its judgment that Commission shall cease to issueshall cause to issue plaintiffs a full refund, plus interest, of taxes paid under protest no later than six months from the date a judgment is final, and then directs the tax assessors to correct the tax rolls. And it also says the assessors have six months from the final judgment to complete the reassessment. Pretty clear to me.
MR. BELL: All right, your honor.
THE COURT: Now, at the end of the day, I understand that you're not going to be happy with what their reassessments are, but that's a different argument for a different day.
Mr. Bell: We can litigate that issue, your Honor.
Plaintiffs assert that the trial court's interpretation of ANR VI compounds the error in this case, as the trial court's August 6, 2007 judgment requires a refund of all taxes paid under protest, but then requires plaintiffs to pay those taxes again, plus additional new taxes, under protest before they can challenge the validity of *104 the reassessed values of their properties. Plaintiffs maintain this cannot be the remedy envisioned by the panel that decided ANR VI when it set the six-month deadline for the reassessment/refund process. We agree.
In ANR VI, we reviewed the trial court's declaratory judgment in favor of plaintiffs whereby the trial court found that the actions of the Commission in the administration of Louisiana's ad valorem tax scheme, as it pertained to plaintiffs' public service pipelines, violated the equal protection and due process clauses of the Louisiana and United States Constitutions. The trial court remanded the matter to the Commission for the reassessment of plaintiffs' public service pipelines for the tax years at issue and the calculation of taxes based on fifteen percent (15%) of those assessments. The trial court further ordered the Commission to issue plaintiffs a full refund, plus interest, of the difference between the amounts paid for each year and the reassessed amount no later than September 20, 2005.
On appeal, we affirmed the judgment to the extent that the matter was remanded to the Commission with instructions that the Commission require the assessors to assess the plaintiffs' public service pipelines for each of the tax years at issue and that the taxes be calculated based on fifteen percent (15%) of those assessments. However, we recognized the need for an extension of the deadline for completion of the reassessment and refund process due to the delays occasioned by the appeal and provided that same would be no later than six months from the date our judgment became final.
It was never our intention that the reassessments would result in the imposition of additional taxes. Rather, the reassessments were to be used for the calculation of taxes on plaintiffs' public service pipelines for the tax years at issue and for the determination of the amount of refunds due, if any, based on the difference between the reassessed amounts and the amount of taxes previously paid under protest. Thus, the process as originally envisioned by the trial court and affirmed by this court in ANR VI was as follows: (1) complete the reassessments of plaintiffs' public service pipelines; (2) calculate the taxes on those properties based on fifteen percent (15%) of those assessments; and (3) refund the difference, if any, between the amounts paid for the tax years in question and the reassessed amounts. The trial court's August 6, 2007 judgment distorted this process by requiring an immediate refund of all property taxes paid under protest for the tax years at issue before the Commission could proceed to hear plaintiffs' appeals from the reassessments of their public service pipelines. The trial court further complicated matters by ordering that any assessors who had not completed the reassessment process within the original six month deadline were barred from participating in any further proceedings and ordering that any refunds that were paid pursuant to its judgment would be full and final. Again, these matters were neither considered nor ruled on in ANR VI. The trial court's judgment is clearly contrary to this court's ruling in ANR VI and must be reversed.

CONCLUSION
For the above and foregoing reasons, we deny the exception raising the objection of lack of subject matter jurisdiction and the motion to strike. We hereby affirm the trial court's August 6, 2007 judgment to the extent that it maintained plaintiffs' exception raising the objection of no cause of action and dismissed the assessors' petition of intervention. In all other respects, we reverse the trial court's judgment and *105 remand with instructions that the trial court (1) remand the matter to the Commission for completion of the reassessment/refund process, and (2) establish any deadlines necessary for the completion of the process that are just and fair to all parties.[8] All costs associated with this appeal are assessed equally between plaintiffs and the assessors.
EXCEPTION RAISING LACK OF SUBJECT MATTER JURISDICTION AND MOTION TO STRIKE DENIED; AUGUST 6, 2007 JUDGMENT AFFIRMED IN PART AND REVERSED IN PART; MATTER REMANDED WITH INSTRUCTIONS.
NOTES
[1] Although plaintiff's in this suit were joined by three other companies (UT Offshore Company, LLC, High Island Offshore System, L.L.C, and Stingray Pipeline Company, L.L.C.) as plaintiffs in ANR VI, ANR Pipeline Company, Tennessee Gas Pipeline Company, and Southern Natural Gas Company are tine only plaintiffs involved in these consolidated appeals.
[2] The relevant portions of La. R.S. 47:1851 provide as follows:

K. "Pipeline company" means any company that is engaged primarily in the business of transporting oil, natural gas, petroleum products, or other products within, through, into, or from this state, and which is regulated by (1) the Louisiana Public Service Commission, (2) the Interstate Commerce Commission, or (3) the Federal Power Commission, as a "natural gas company" under the Federal Natural Gas Act, 15 U.S.C. §§ 717-717w, because that person is engaged in the transportation of natural gas in interstate commerce, as defined in the Natural Gas Act.
....
M. "Public service properties" means the immovable, major movable, and other movable property owned or used but not otherwise assessed in this state in the operations of each airline, electric membership corporation, electric power company, express company, gas company, pipeline company, railroad company, telegraph company, telephone company, and water company. For each barge line, towing, and other water transportation company or private car company, only the major movable property owned or used but not locally assessed or otherwise assessed in this state in interstate or interparish operations shall be considered as public service property.
[3] In brief to this court, plaintiffs allege that "[a]lthough many parish assessors completed their revaluations of Plaintiffs' public service properties ... a significant number did not." However, the parish assessors assert on appeal that they collectively performed 526 separate reassessments of plaintiffs' property and that each assessor, with the exception of the assessor for Tangipahoa Parish, completed reassessment within the six month deadline.
[4] According to the record, the correctness appeals were scheduled to begin on June 19, 2007, before the Commission. On June 18, 2007, plaintiffs obtained a temporary restraining order enjoining the Commission from conducting the hearings until such time as plaintiffs receive a full refund of all taxes paid under protest. The temporary restraining order was converted to a preliminary injunction on August 9, 2007. That judgment was appealed to this court under Docket No. 2007 CA 2282.
[5] We have reviewed the parties' respective arguments concerning the objection of lack of subject matter jurisdiction and the motion to strike plaintiffs' answer to appeal. Considering the applicable law and the record before us, we find no merit to the assessors' argument regarding same and hereby deny both the exception and the motion to strike.
[6] Louisiana Code of Civil Procedure article 2082 provides as follows: "Appeal is the exercise of the right of a party to have a judgment of a trial court revised, modified, set aside, or reversed by an appellate court."
[7] According to the record, even plaintiffs acknowledged below that the assessors had a right to prosecute the instant appeal. Following the trial court's August 6, 2007 judgment, the assessors originally moved for a suspensive appeal to which plaintiffs objected. Plaintiffs noted that "[b]ecause their intervention was denied, the Assessors [were] third parties seeking to appeal judgment pursuant to Louisiana Code of Civil Procedure 2086." However, plaintiffs went on to state that the assessors "have the requisite interest in the proceedings to appeal." The trial court subsequently denied the assessors' motion for suspensive appeal and granted them a devolutive appeal.
[8] We note that should there be noncompliance with these deadlines, the parties should utilize the procedures set forth in the Louisiana Code of Civil Procedure for contempt of court. See La.Code Civ. P. arts. 221, et. seq.