WEIMER, Justice.
11 This matter has a complicated and convoluted procedural history, which has ultimately resulted in a “cobweb of litigation,” as appropriately recognized by the appellate court. Currently before this court are the issues of whether the reassessment of public service properties issued on remand of this matter in accordance with a court order constituted a local assessment by the local assessors or a central assessment by the Louisiana Tax Commission (LTC) and whether, in this taxpayers’ action, the assessors have a right to challenge a decision of the LTC relative to those reassessment valuations. For the reasons that follow, we conclude that the ^reassessments are central assessments governed by the provisions of La. Const, art. VII, § 18 and La. R.S. 47:1851, et seq. We further find that, once joined by the taxpayers as defendants in the taxpayers’ Section 1856 action for judicial review, the assessors are entitled to challenge the LTC’s final determination of the reassessment valuations. Accordingly, we find the lower courts erred in sustaining the taxpayers’ exceptions of no right of action and dismissing the assessors’ cross-appeals.
FACTS AND PROCEDURAL HISTORY
This case has its genesis in 1994 when ANR Pipeline Company (ANR) first challenged the ad valorem taxes assessed against its public service pipelines by filing a protest with the Louisiana Tax Commission (LTC). Thereafter, through 2003, ANR filed annual protests with the LTC. Tennessee Gas Pipeline Company (TGP) and Southern Natural Gas Company (SNG) also filed protests with the LTC regarding the ad valorem taxes assessed against their public service pipelines from 2000 to 2003.
ANR, TGP, and SNG (collectively taxpayers) are foreign corporations that provide natural gas transportation, storage, and balancing services in Louisiana and in interstate commerce and are regulated by the Federal Energy Regulatory Commission pursuant to the Natural Gas Act, 15 U.S.C. § 717, et seq. These companies each own interstate natural gas transmission pipelines in Louisiana, which properties are classified and taxed in Louisiana for ad valorem tax purposes as public service properties. See La. R.S. 47:1851(K) *736 and (M).[2] A number of intrastate natural 13gas, oil, and other liquid pipeline companies are regulated by the Louisiana Public Service Commission as provided in La. R.S. 30:551(A) and qualify as pipeline companies under La. R.S. 47:1851(K). The pipelines of the intrastate companies do not qualify as “public service properties.” The intrastate pipelines are instead classified as “other property” by local assessors and assessed at 15 percent of fair market value pursuant to La. Const, art. VII, § 18(B), while the pipelines of the interstate companies are classified as “public service property” by the LTC and assessed at 25 percent of fair market value pursuant to La. Const, art. VII, § 18(B).
In their separate protest proceedings with the LTC, the taxpayers made a constitutional challenge concerning that portion of the ad valorem taxes assessed to them in excess of 15 percent of fair market value. Meanwhile, the taxpayers filed separate suits against the LTC in 2000 in the Nineteenth Judicial District Court for the
Parish of East Baton Rouge (19th JDC) (ANR I).[3] In those suits, the taxpayers sought a declaratory judgment and refund of the taxes paid under protest, asserting that the disparate treatment of intrastate and interstate pipeline companies violates the uniformity requirement of La. Const, art. VII, § 18(A), the equal protection and due process clauses of the state and federal constitutions, and the commerce clause of the federal constitution. The taxpayers also alleged that La. R.S. 47:1851(K) is unconstitutional. The district court suits were consolidated for trial.
14After trial, the district court rendered a declaratory judgment in favor of the taxpayers, finding that the actions of the LTC in the administration of Louisiana’s ad valorem tax scheme as it pertains to the taxpayers’ public service pipelines violates the equal protection and due process clauses of the state and federal constitutions.[4] Instead of awarding a cash refund or a credit against future taxes under the then-applicable version of La. R.S. 47:1856(F)(l)(a),[5] the district court re *737 manded the matter to the LTC with instructions that it require parish assessors to “assess the public service pipelines of the plaintiffs for each of the years at issue and that taxes thereof be calculated [at] 15% of those assessments[.]” The district court further ordered the LTC to issue the taxpayers a full refund of the difference between the amounts paid for each year and the reassessed amount, plus interest.
|fiOn appeal, the appellate court affirmed the declaratory judgment rendered in favor of the taxpayers as to the equal protection and due process violations, as well as the remand to the LTC for purposes of reassessment. Citing La. R.S. 47:1837, the appellate court recognized that “[o]n remand, it is within the province and authority of the Commission to correct errors in appraisal and/or assessment of public service properties.” ANR Pipeline Co. v. Louisiana Tax Com’n, 05-1142 (La.App. 1 Cir. 9/7/05), 923 So.2d 81, 92 (ANR VI). Regarding the taxpayers’ challenge of the appropriateness of the remedy ordered by the district court, the appellate court found that the remedy was just and equitable in that the taxpayers would have ample opportunity to object to the local assessors’ valuations pursuant to La. R.S. 47:1992(B). ANR VI, 923 So.2d at 97-98. With regard to the refunds, the judgment was modified to recognize that LTC’s duty to ultimately issue refunds was to be accomplished through modification of the tax rolls under La. R.S. 47:1837. ANR VI, 923 So.2d at 99.
Subsequently, this court denied the taxpayers’ writ application in ANR VI,[6] and the decision became final, prompting a series of orders by the LTC relating to the reassessment of the taxpayers’ properties by the various parish assessors. In particular, the LTC issued Order No. 03-22-06, canceling the determinations of assessed values issued by the LTC and ordering the assessors to reassess the taxpayers’ property “utilizing the same valuation methodology used by their offices in assessing non-public service properties during the tax years in question and thereafter determine the assessed value of the [taxpayers’] property ... at a rate of ^fifteen percent (15%) of fair market value.” Pursuant to the LTC’s orders, the assessors began the reassessments.
In ANR Pipeline Co. v. Louisiana Tax Com’n, 08-1148 (La.App. 1 Cir. 10/17/08), 997 So.2d 92, writ denied, 09-0025, 09-0027 (La.3/6/09), 3 So.3d 484 (ANR VII), the appellate court stated that, on remand to the LTC, the process required: (1) completion of the reassessments of taxpayers’ public service pipelines by the LTC; (2) calculation of the taxes on those properties based on 15 percent of those assessments; *738 and (8) refund of the difference, if any, between the amounts paid for the tax years at issue and the reassessed amounts. ANR VII, 997 So.2d at 104. While reassessment resulted in a decrease in taxes in some parishes, it resulted in an increase in taxes in other parishes.
In connection with the filing of their reassessment returns with the assessors, the taxpayers requested a reduction in the reassessment valuation for obsolescence. Those requests were denied by the assessors, resulting in the taxpayers’ lodging of 359 correctness challenges with various parish boards of review. After receiving a number of adverse determinations from those boards, the taxpayers appealed the assessments to the LTC. In its November 23, 2009 ruling in those appeals, the LTC noted that the assessors had complied with Order No. 03-22-06 by issuing the relevant tax forms to the taxpayers, who subsequently filed their returns with the assessors. In their returns, the taxpayers reported the depreciated replacement cost of their pipelines and, in an addendum to those returns, sought a reduction in value for obsolescence based on varying service factor calculations.
The LTC further found that the assessors had shown they had employed the same valuation and assessment methodology as that used to assess the properties of intrastate companies in accordance with the directive of ANR VI. As to the issue of Ivobsolescence, the LTC determined that the taxpayers had carried their burden and proved they were entitled to a reduction in their values for a certain level of obsolescence. The LTC concluded:
Nevertheless, on the limited facts of this case, recognizing that 1) these are rate-regulated taxpayers, 2) whose pipelines traverse this state and numerous other states, and 3) where approximately 3/8 of the parishes involved apparently did allow a reduction in value due to obsolescence, applying the service factor for throughput provided in the guidelines, the Commission finds that the failure to adjust these taxpayers’ values for obsolescence in accordance with the service factor for throughput provided in the guidelines, reached incorrect values for the taxpayers’ properties, and constituted an abuse of discretion on the part of Assessors who failed to allow these taxpayers a deduction for obsolescence over and above physical deterioration. We next turn to a determination of the appropriate deductions due to this obsolescence.
The record indicates that affidavits by Sally Costley dated August 28, 2006 provided to all of the Assessors indicated throughput figures for each of the taxpayers for each of the years involved. This affidavit corrected such figures that had been provided in addenda to the LAT forms filed by the taxpayers earlier that year. Although there was some evidence that these corrected figures may have been received by Assessors after they had completed the reassessment process, it would seem to have been simple enough for Assessors to have revised their reassessments in accordance with these corrected figures at around that time.
The Commission adopts those throughput figures as the prevailing evidence as to obsolescence, and, applying same to the guidelines contained in Chapter 13 of the Commission’s Rules and Regulations, hereby finds that the assessed values certified to the Commission by the Boards of Review are to be reduced by the applicable service factor indicated by those guidelines. The relevant service factor reductions for each taxpayer for each year are set forth in Exhibit A attached hereto and incorporated herein. It should be noted that for years prior to 1998, the table that existed for subsequent years are not *739 present in the guidelines. Nevertheless, the Commission finds that those tables were adopted due to industry and Commission standard and practice reflecting the treatment of obsolescence over numerous preceding years, and finds that the application of similar standards to years preceding the adoption of such table is reasonable.
Subsequently, the LTC supplemented its findings of fact and conclusions, holding that “the obsolescence factors computed by utilizing the taxpayers’ | sthroughput/capacity figures under table 1305 of the Rules and Regulations shall be applied to the total property of the taxpayers to determine the amounts of refunds due, if any.”
Immediately following the LTC’s ruling, the taxpayers filed a petition for judicial review in the 19th JDC, which was assigned docket number 584,818 and eventually transferred to the district court judge who handled the prior proceedings in docket number 468,417 and the other consolidated cases (ANR /), which involved the taxpayers’ request for a refund.[7] Additionally, some assessors sought judicial review of the LTC’s ruling in their “home” parishes. Those cases include the following, which are currently pending before this court: Michael Martin, in his Capacity as Assessor for Lafourche Parish v. ANR Pipeline Co., 11-0751 (La.App. 1 Cir. 8/28/11), 76 So.3d 534, writ granted, 11-2079 (La.12/16/11), 76 So.3d 419 (an appeal by the pipeline companies from a ruling of the Seventeenth Judicial District Court for the Parish of Lafourche in an action by the assessor that reversed and vacated the LTC’s ruling and reinstated assessment values as determined by the assessor for purposes of determining whether any refund was owed to the pipeline companies); Gene Bonvillain, Assessor of Terrebonne
Parish v. Tennessee Gas Pipeline Co., 11-0963 (La.App. 1 Cir. 10/06/11), 88 So.3d 474, writ granted, 11-2193 (La.12/16/11), 76 So.3d 419 (an appeal by the pipeline company from a ruling of the Thirty-second Judicial District Court for the Parish of Terrebonne by the assessor against a pipeline company and the LTC that also reversed and vacated the LTC’s ruling and reinstated the assessor’s assessment values); In Re: Appeal of ANR Pipeline Co., Mona Kelley, in her Official Capacity as Cameron \ JParish Tax Assessor v. ANR Pipeline Co., 11-0379 (La.App. 3 Cir. 8/10/11), 73 So.3d 398, writ granted, 11-2252 (La.12/16/11), 76 So.3d 420 (the Thirty-eighth Judicial District Court for the Parish of Cameron overruled the taxpayers’ exceptions of lis pendens, lack of subject matter jurisdiction, no right of action, and prescription and found that the evidence was insufficient to support the LTC’s decision to reverse assessor’s decision not to grant obsolescence for those portions of pipelines located in parish); Geneva Odom, in her Official Capacity as Assessor for East Carroll Parish v. Southern Natural Gas Co., 46,598 (La.App. 2 Cir. 8/17/11), 72 So.3d 437, writ granted, 11-2266 (La.12/16/11), 76 So.3d 421 (the Sixth, Second, and Fifth Judicial District Courts for the Parishes of East Carroll, Jackson, and West Carroll overruled the taxpayers’ exceptions of lis pendens and found that the LTC exceeded its authority in reducing assessments for obsolescence); Kathryn Broussard, in her Official Capacity as Assessor for Vermilion Parish v. Southern Natural Gas Co., 11-01321 (La.App. 3 Cir. 11/10/11) (unpublished writ action), writ granted, 11-2716 (La.12/16/11), 76 So.3d 421 (the appellate court granted the assessor’s request for a supervisory writ and reversed a judgment by the Fifteenth Judicial District Court for the Par *740 ish of Vermilion that sustained the taxpayers’ exception of lis pendens based on the holding in the Martin case).
Shortly thereafter, the taxpayers amended their district court pleadings in docket number 585,818 and submitted a spreadsheet to provide “the correct assessed valuation of [their] public service property for purposes of ad valorem taxation, which is calculated at 15% of [the LTC’s] determination of Louisiana taxable values.” Later, the taxpayers again amended their pleadings to name over 30 assessors as defendants to these proceedings. Before being named as defendants, 25 assessors filed cross-claims and recon-ventional demands/cross-appeals in the taxpayers’ action |infor judicial review of the LTC’s November 23, 2009 ruling. In their pleadings, the assessors sought judicial review of the LTC’s ruling that the assessors had abused their discretion in reassessing the properties by denying the request for reductions in value for obsolescence. The assessors also sought reversal and vacatur of the LTC’s decision, reinstatement of their original determinations of fair market and reassessed value of the taxpayers’ property, and dismissal of the taxpayers’ claims for refund. In their pleadings, the assessors specifically alleged that they were seeking judicial review pursuant to the provisions of La. R.S. 47:1998.[8]
In response to the assessors’ claims, the taxpayers raised numerous exceptions, including an exception raising the objection of no right of action. According to the taxpayers, the assessors’ authority to reassess the interstate pipelines was granted by the courts in the exercise of their equitable power to fashion a remedy to address the prior discriminatory treatment by the LTC. Thus, any involvement by the courts ^relative to the resulting assessments should be by the 19th JDC in the already-existing suits, that is, ANR VI, docket number 468,417 and the other consolidated cases in the 19th JDC. The taxpayers further argued that at no point in ANR VI did the courts authorize the assessors to appeal (pursuant to La. R.S. 47:1998) the LTC’s ruling with respect to the calculation of the taxpayers’ taxes or the amount of any refunds owed. Relying on La. R.S. 47:1903.3,[9] the taxpayers urged *741 that the assessors, instead, had the right to intervene in the appeal taken by the taxpayers. The taxpayers concluded: “Thus, while the Assessors are not without access to review of the Commission’s decision, they cannot initiate such review on their own or convert this matter into an appeal under La. R.S. 47:1998.”
In opposing the taxpayers’ exception of no right of action, the LTC stated:
Because of these pipeline companies’ own protestations of so-called “discrimination;” both this Court and the First Circuit removed these taxpayers’ assessments from the public service property provisions (to which 47:1856 would have applied) to a situation of re-assessment by the local assessors “under the same methods as the preferred competition,” which has been done, and to which 47:1998 applies.
The assessors urged that La. R.S. 47:1998 affords them a right to appeal from the LTC’s decision. Alternatively, the assessors contended that they possess a right to seek judicial review under La. Const, art. I, §§ 2 and 22 and La. R.S. 49:964 since the assessors are parties to the underlying proceedings from which the appeal was taken and are dissatisfied with and aggrieved by the LTC’s findings. According to the assessors, the facts of this case are distinguishable from Gisclair v. Louisiana \ KTax Com’n, 10-0563 (La.9/24/10), 44 So.3d 272 (Gisclair II)[10] in that the assessors here are not challenging an assessment rendered by the LTC but are instead seeking judicial review of a ruling rendered by the LTC on review of the correctness of assessments rendered by the assessors, which is covered by La. R.S. 47:1998. Furthermore, the assessors argued that, having joined the assessors as parties in their petition for judicial review, the taxpayers cannot now legitimately complain that the assessors are not vested with all of the rights of a party, including the right to file cross-claims and reconven-tional demands/cross-appeals.
Following the hearing on the taxpayers’ exceptions, the district court in this matter before the 19th JDC held:
The original judgment in this matter and the intent of the judgment was that because you had been treated [differently] from other interstate gas line transmission companies, that you were to be treated the same as those that had been locally assessed rather than commission assessed. It does not change the nature of what you are. You’re an interstate, and to the extent that the tax commission delegated the assessment to anybody else on the planet is of no moment. You still are an interstate pipeline that falls within those, statutes. The order-or the judgment was that they were to utilize the methodology only of the intrastate transmission companies. There’s no suggestion that they lost jurisdiction over you as an interstate company.... I’m going to grant the no right of action .
Accordingly, the district court sustained the exception, dismissing the cross-claims and reconventional demands/cross-appeals filed by the assessors. The assessors appealed,[11] contending that the district court erred (1) in holding that judicial review *742 11Rof a ruling of the LTC rendered pursuant to La. R.S. 47:1989[12] is governed by the procedural provisions of La. R.S. 47:1856 rather than La. R.S. 47:1998 and (2) in maintaining the taxpayers’ exception of no right of action and dismissing the cross-claims and reconventional demands/cross-appeals filed by the defendant assessors. See ANR Pipeline Co. v. Louisiana Tax Com’n, 11-0425 (La.App. 1 Cir. 8/23/11), 76 So.3d 521, 529 (ANR IX).
Recognizing that the assessors’ only authority to reassess the taxpayers’ public service property in this case was judicially granted, the appellate court in ANR IX found that the assessors did not have a right of action, under the statutory provision regarding judicial review of public service property assessment procedure,[13] to appeal the decision of the LTC. ANR IX, 76 So.3d at 532. Stated differently, La. R.S. 47:1998 does not afford the assessors a right of action to appeal the LTC’s ruling as to the assessment valuations of the public service properties by the assessors. Id. at 533. Furthermore, the appellate court in ANR IX found that because the reassessment and refund process was part of the court-ordered remedy phase of the on-going litigation in the 19th JDC, any review of same could only be conducted within the on-going litigation, which was instituted pursuant to La. R.S. 47:1856. Id. at 538. Nonetheless, the appellate court found that the assessors’ improper labeling of their pleadings as cross-claims and reconventional demands/cross-appeals did not prevent them from having standing to intervene in the taxpayers’ petition for judicial review. Id. at 533-34; see La. R.S. 47:1903.3 and La. C.C.P. art. 1091.
J^The assessors applied to this court for a writ of certiorari and/or review, which was granted. See ANR IX, 11-2078 (La.12/16/11), 76 So.3d 418. On review in ANR IX, the assessors urge that the appellate court erred (1) in interpreting and applying Gisdair II, (2) in concluding that the judicial review sought by the taxpayers was “part of the remedy phase of the ongoing litigation ... which was instituted pursuant to La. R.S. 47:1856,” (3) in failing to recognize that La. Const, art. I, §§ 2[14] and 22[15] and La. R.S. 49:964(A)(1) of the Louisiana Administrative Procedure Act afford the assessors with a right of judicial review, and (4) in reclassifying the assessors’ cross claims and reconventional demands/cross-appeals as interventions. Thus, we must determine what rights the assessors had with respect to the decision rendered by the LTC on November 23, 2009.
DISCUSSION
Concerning ad valorem taxes, La. Const, art. VII, § 18, in pertinent part provides:
(A) Assessments. Property subject to ad valorem taxation shall be listed on the assessment rolls at its assessed valuation, which, except as provided in Paragraphs (C) and (G), shall be a percentage of its fair market value. The percentage of fair market value shall be uniform throughout the state upon the same class of property.
*743 (B) Classification. The classifications of property subject to ad valorem taxation and the percentage of fair market value applicable to each classification for the purpose of determining assessed valuation are as follows:
Classifications Percentages
1. Land 10%
2. Improvements for residential purposes 10%
|1S3. Electric cooperative properties, excluding land 15%
4. Public service properties, excluding land 25%
5. Other property 15%
The legislature may enact laws defining electric cooperative properties and public service properties.
[[Image here]]
(D) Valuation. Each assessor shall determine the fair market value of all property subject to taxation within his respective parish or district except public service properties, which shall be valued at fair market value by the Louisiana Tax Commission or its successor- Fair market value ... of property shall be determined in accordance with criteria which shall be established by law and which shall apply uniformly throughout the state.
(E) Review. The correctness of assessments by the assessor shall be subject to review first by the parish governing authority, then by the Louisiana Tax Commission or its successor, and finally by the courts, all in accordance with procedures established by law.
(F) Reappraisal. All property subject to taxation shall be reappraised and valued in accordance with this Section, at intervals of not more than four years.
The process of valuation and assessment for most property is often referred to as a “local assessment” because it is done by the local assessor in each parish, see La. Const, art. VII, § 18(D), and is governed by the provisions set forth in La. R.S. 47:1951, et seq. Gisclair v. Louisiana Tax Com’n, 09-0007, p. 2 (La.6/26/09), 16 So.3d 1132, 1134 n. 2 (Gisclair I). The procedure for assessments of utilities and other public service properties is often referred to as a “central assessment” because valuation and assessment is done centrally by the LTC in Baton Rouge. See La. Const, art. VII, § 18(D). The latter procedure is governed by the provisions set forth in La. R.S. 47:1851, et seq. Gisclair I, 09-0007 at 2,16 So.3d at 1134 n. 2.
As previously indicated, “public service properties” include “the immovable, major movable, and other movable property owned or used but not otherwise assessed in this state in the operations of each ... pipeline company.” La. R.S. 47:1851(M). 1 Hi A “pipeline company” is “any company that is engaged primarily in the business of transporting oil, natural gas, petroleum products, or other products within, through, into, or from this state, and which is regulated by (1) the Louisiana Public Service Commission, (2) the Interstate Commerce Commission, or (3) the Federal Power Commission, as a ‘natural gas company’ under the Federal Natural Gas Act, 15 U.S.C. §§ 717-717w, because that person is engaged in the transportation of natural gas in interstate commerce, as defined in the Natural Gas Act.” La. R.S. 47:1851(K). The parties do not dispute that the taxpayers are “pipeline companies” and that the pipelines in question are “public service properties.”
Concerning the appraisal of public service property, La. R.S. 47:1853 provides:
A. In accordance with the provisions of this Section and Sections 1854 and 1855, the Louisiana Tax Commission shall, on or before September first of each calendar year, appraise, for taxation, public service properties based upon each company’s report, as defined in Section 1852(A) and such other information as may be available to the Louisiana Tax Commission. In the absence of a report the Louisiana Tax Commis *744 sion shall appraise the properties of any company failing to file such a report upon any information which the Louisiana Tax Commission, in its best judgment, deems sufficient.
B.(1) In appraising public service properties, the Louisiana Tax Commission shall:
(a) Employ all of the following nationally recognized techniques of appraisal, where applicable, to best determine fair market value:
(1) The market approach.
(ii) The cost approach.
(iii) The income approach.
(b) Assign such weight to each approach as is appropriate to best determine fair market value.
(2) However, all public service properties of the same nature and kind shall be appraised in the same manner. The appraised value of all lands owned by the company in this state shall be deducted from the total appraised value of the public service properties and shall be 117assessed by the Louisiana Tax Commission and shown as a separate item on the tax roll.
(3) Notwithstanding any other law to the contrary, for the years 1993 and 1994, the commission shall allocate the value of all inventories of natural gas owned by a pipeline company in this state to each tax jurisdiction in which the inventories are located according to its long-held administrative construction and interpretation of the law. At the expiration of the time provided herein, the commission shall develop a fair, equitable, and consistent system of valuation of such inventories for all parishes affected by any revisions to ad valorem property tax procedures, including but not limited to the parishes of Bienville, East Carroll, Lincoln, and West Carroll.
C. All taxable immovable, major movable, and other movable public service properties of a company that is nonoperating or nonutility shall be appraised and assessed by the local tax assessor in the same manner and by the same standards as similar property in the parish in which it is located.
D. In no event, however, shall the Louisiana Tax Commission adopt schedules that reflect average life values of the property instead of appraising the individual companies.
E. The appraisal for the first year only shall be accomplished by the Louisiana Tax Commission through the use of an independent appraisal firm or firms qualified in the appraisal of public service properties.
Furthermore, La. R.S. 47:1957(A), located in the general assessment provisions, provides, in pertinent part:
All taxable property in the state, except public service properties, shall be assessed by the several assessors. The assessors shall be responsible, under the supervision of the tax commission, for listing and assessing all property within their respective parishes, except such property as is subject to direct assessment by the tax commission.
Clearly, the LTC has a constitutional and statutory duty to appraise, value, and assess public service property. See La. Const, art. VII, § 18(D); La. R.S. 47:1853 & 1957(A).
An appraisal is performed to determine the fair market value of the property being assessed. The fair market value of public service property is to be used by the 11SLTC in determining the assessment valuation, allocating that valuation to local taxing units, calculating assessments, and assessing the taxpayer. See La. R.S. 47:1854[16] and 1855(A); see also La. Const. *745 art. VII, § 18. Because public service properties are centrally assessed by the LTC, not local assessors, the LTC issues the initial determination of the assessed valuation of public service properties and reviews that determination upon the filing of a protest by the taxpayer. La. R.S. 47:1856.[17] 1 gpTherefore, the LTC has origi *746 nal jurisdiction over correctness challenges involving public service properties. See Gisclair I, 09-0007 at 6, 16 So.3d at 1136, citing ANR Pipeline Co. v. Louisiana Tax Com’n, 02-1479 (La.7/2/03), 851 So.2d 1145, 1146 n. 3 (ANR IV). Correctness challenges are directed at issues of regularity or correctness of the assessment, such as over-valuation and misdescription. Gisclair I, 09-0007 at 6, 16 So.3d at 1136. If a correctness challenge is successful, the assessment is not voided but simply reduced or corrected. Id., citing Morgan’s Louisiana & T.R. & S.S. Co. v. Pecot, 50 La.Ann 737, 742-43, 23 So. 948, 950-51 (1898).
In this case, the taxpayers presented correctness challenges first to the LTC by virtue of annual protests filed pursuant to La. R.S. 47:1856 and then to the district court by a suit for declaratory judgment and refund of taxes paid under protest that centered around a legal challenge. In the latter proceeding, the courts ruled on the legal challenge in ANR VI. The district court in ANR VI found that the actions of the LTC in the administration of Louisiana’s ad valorem tax scheme, as it pertained to the taxpayers’ public service pipelines, violated the equal protection and due process clauses of the state and federal constitutions. The matter was then remanded by the district court with instructions to the LTC for further proceedings. To achieve uniformity in the taxation of intrastate and interstate pipelines, the LTC was instructed by the district court to have parish assessors assess the taxpayers’ public service pipelines for each of the *747 years at issue and calculate taxes based on 15 percent of those assessments.
laiOn appeal in ANR VI, the taxpayers urged that to the extent there is no constitutional, statutory, or other legal basis for permitting assessors to assess public service properties, the district court erred in remanding the matter to the LTC for that purpose. ANR VI, 05-1142 at 21, 923 So.2d at 93. Finding that the taxpayers would have ample opportunity to object, if necessary, to the assessors’ valuations, the CA found that the remedy ordered by the district court was both just and equitable. ANR VI, 05-1142 at 27, 923 So.2d at 97-98. That decision is now final.
The issue presented in this case revolves around the affect of the court order and/or the subsequent order by the LTC to assessors and the LTC’s constitutional and statutory duty relative to the assessment of public service properties. Did the courts and/or LTC by virtue of their orders delegate the LTC’s exclusive authority to value and assess public service property to the assessors, thus making the resulting assessment a “local assessment” as urged by the assessors? In light of La. Const, art. VII, § 18(D), is it possible for the LTC to make such a delegation? Or, did the assessment remain that of the LTC, thus, constituting a “central assessment” with the order by the LTC to the assessors simply amounting to a request for assistance from them in the determination of the assessments in question?
Louisiana Const, art. VII, § 18(D) specifically usurps from an assessor’s authority the power to value public service property and empowers only the LTC with the authority to fulfill that duty. There is no constitutional or statutory authority for the delegation by the courts or by the LTC of the LTC’s exclusive authority to appraise and assess public service properties. However, the LTC is statutorily authorized to seek assistance in connection with its duty to appraise such property. La. R.S. 47:1853(E). In performing its first-year appraisal of such property, the LTC is required to engage the services of “an independent appraisal firm or firms qualified Lain the appraisal of public service properties.” La. R.S. 47:1853(E). Although the first-year appraisal must be accomplished through the use of an independent appraisal firm or firms, the appraisal is that of the LTC and subject to the provisions of La. R.S. 47:1851, et seq. In subsequent years, the LTC is required by La. R.S. 47:1853(A) to reappraise public service property annually “on or before September first” for taxation purposes. For those appraisals, La. R.S. 47:1853 neither mandates nor precludes the LTC’s use of the services of an independent appraisal firm or of anyone else. As such, the LTC is free to obtain the assistance of assessors in connection with the performance of its constitutional and statutory duties relative to public service properties. Accordingly, we find that by utilizing the assistance of the assessors in Order No. 03-22-06, albeit pursuant to a court order, the LTC did not delegate its authority to the assessors relative to the assessment of these public service properties for the tax years in question.
Despite the court-ordered involvement of assessors, the LTC was constitutionally and statutorily charged and remained so charged with the duty of making and completing the assessments for the taxation of those public service properties and issuing an initial determination on remand of the assessed valuation to the taxpayers pursuant to La. R.S. 47:1856. Therefore, the assessments in question in this case remained “central assessments” governed by the provisions of La. R.S. 47:1851, et seq.
With the assistance of the assessors, the LTC was charged on remand with reappraising and reassessing the public service *748 properties for the tax years in question. The resulting fair market value was to be used in determining the assessment valuation, allocating that valuation to local taxing units, and calculating assessments for purposes of determining the refund, if any, to which the taxpayers | Mwere entitled. The time delay for filing a protest of the LTC’s resulting initial determination of the reassessed valuation would begin on the taxpayer’s receipt of written notice from the LTC. See La. R.S. 47:1856(A).[18]
Upon discovering that some of the assessors’ revaluations differed from their valuations due to the assessors’ refusal to factor in obsolescence, the taxpayers initially sought review of the assessors’ valuations by the local boards of review. Subsequently, the taxpayers filed an objection as to the proposed valuations of the assessors with the LTC via an appeal, which resulted in the rendering of a final determination by the LTC on November 23, 2009, as to the reassessed valuations.[19] The fact that the taxpayers initially sought review of the assessors’ proposed valuations by the local boards of review did not alter the fact that it was the LTC that was responsible for making the initial and final determinations of the reassessed valuation of public service properties. The taxpayers’ rights concerning such determinations are governed by La. R.S. 47:1856.
This court in Gisclair II, 10-0563 at 7-8, 44 So.3d at 278, addressed the issue of who has the right to challenge the application of the relevant laws governing the tax valuation of public service properties. Because La. R.S. 47:1998(C) is located in the general assessment provisions of the ad valorem property tax statutes, rather than in the special provisions governing the assessment of public service properties set forth in La. R.S. 47:1851-1858, the majority of this court in a per curiam opinion in Gisclair II, interpreting the rights afforded by La. R.S. 47:1856(G),[20] found that the I fright to bring an “as applied” challenge regarding tax valuation of public service property belongs solely to the public service taxpayer, and not to the assessor. Gisclair II, 10-0563 at 7-10, 44 So.3d at 278-80. The fact that the taxpayer is required under La. R.S. 47:1856(G) to name an affected assessor as a party to its action does not grant the affected assessor the right to bring a suit. Id., 10-0563 at 8-10, 44 So.3d at 279-80. Because the assessor’s petition against the LTC in Gisclair II failed to disclose a right of action, the majority of this court, on its own motion, noticed and sustained under the authority of La. C.C.P. art. 927, a peremptory exception of no right of action. Accordingly, the assessor’s petition in Gisclair II was dismissed. Id., 10-0563 at 10, 44 So.3d at 280.
In determining whether the assessors could file a cross-claim, reconventional demand, or cross-appeals in the instant proceeding by the taxpayers, which challenged portions of the LTC’s November 23, 2009 final determination of the reassessed valuations, the appellate court applied Gisclair II and found that the assessors in this case did not have a right of action under La. R.S. 47:1998 to appeal the decision of the LTC relating to the reassessment of public service properties. *749 ANR IX, 11-0425 at 13-14, 76 So.3d at 532.
For the following reasons, which differ from those urged by the assessors, we agree that Gisclair II is not determinative of whether the assessors have a right to assert a cross-appeal against the taxpayers in this case. In Gisclair II, an assessor filed a suit against the LTC to challenge the application of the relevant laws governing the tax valuation of public service properties. Here, the assessors did not initiate the action. Rather, the assessors sought to participate in the action that had been filed by the taxpayers. For this reason, we find that the facts of Gisclair II are distinguishable from those of the instant case.
l^When the cross-claims and reconven-tional demands/cross-appeals were filed in this case, the assessors were not parties to the taxpayers’ action. However, by the time of the hearing on the taxpayers’ exception of no right of action in this case, over 30 assessors had been named by the taxpayers as defendants to the action in a supplemental and amending petition filed by the taxpayers as required by La. R.S. 47:1856(G)[21] and 2134(B)(3).[22] These statutes require that assessors for the parishes or districts in which the property is located be named as party defendants.
Even if the assessors’ rights pri- or to being named as party defendants were limited to that of an intervention,[23] once they were named as party defendants in the taxpayers’ action as required by law, we conclude that the assessors could not be deprived of a right to also challenge the LTC’s final determination of the reassessment valuations by way of cross-appeals.[24] Accordingly, we agree with the assessors’ assertion that any question regarding their procedural status in this case was rendered moot when the taxpayers pleadings were amended to expressly name the assessors as defendants. Therefore, we find that the lower courts in this case improperly sustained the taxpayers’ exception and dismissed the assessors’ cross-appeals.
CONCLUSION
laiBecause, ultimately, the LTC remained constitutionally and statutorily charged with the duty of making and completing the reassessments of the public service properties, the resulting reassessments constituted “central assessments” governed by the provisions of La. Const, art. VII, § 18 and La. R.S. 47:1851, et seq. Once joined by the taxpayers as defendants in the taxpayers’ Section 1856 action for judicial review, the assessors were entitled to challenge the LTC’s final determination of the reassessment valuations.
DECREE
For the foregoing reasons, we affirm that portion of the lower court decisions that found that the reassessments were central assessments governed by the provisions of La. Const, art. VII, § 18 and La. R.S. 47:1851, et seq. That portion of those decisions that sustained the taxpayers’ ex *750 ception of no right of action and dismissed the assessors’ cross-claims and reconven-tional demands/cross-appeals, is reversed. The exception is overruled and this matter is remanded to the district court for further proceedings.
AFFIRMED IN PART; REVERSED IN PART; EXCEPTION OF NO RIGHT OF ACTION IS OVERRULED; REMANDED.

.La. R.S. 47:1851 (K) provides:
"Pipeline company” means any company that is engaged primarily in the business of transporting oil, natural gas, petroleum products, or other products within, through, into, or from this state, and which is regulated by (1) the Louisiana Public Service Commission, (2) the Interstate Commerce Commission, or (3) the Federal Power Commission, as a "natural gas company” under the Federal Natural Gas Act, 15 U.S.C. §§ 717-717w, because that person is engaged in the transportation of natural gas in interstate commerce, as defined in the Natural Gas Act.
In pertinent part, "public service property” is defined in La. R.S. 47:1851(M) as:
[T]he immovable, major movable, and other movable property owned or used but not otherwise assessed in this state in the operations of each airline, electric membership corporation, electric power company, express company, gas company, pipeline company, railroad company, telegraph company, telephone company and water company.

. See Docket numbers 468,417; 480,159; 480,160; 480,161; 480,163; 480,373; and 485,716.

. The district court pretermitted discussion of the constitutionality of La. R.S. 47:1851(K) and (M).

. When the judgment was rendered in this matter, La. R.S. 47:1856(F)(1) provided:
F. (l)(a)(i) If the assessed valuation finally determined by the court is less than the amount determined by the Louisiana Tax Commission, the company shall be entitled to a credit against future property taxes in each jurisdiction affected or a refund in cash from each jurisdiction affected. Such credit shall be deducted by the Louisiana Tax Commission from the assessment of the year subsequent to any final determination. If a company chooses a refund, that refund shall be paid by the tax collector of each affected jurisdiction no later than March thirty-first of the year subsequent to any final determination. Interest shall be credited at the minimum rate as provided in R.S. 39:1217.1.
*737 (ii) Notwithstanding Subsubparagraph (i) of this Paragraph, the company shall be granted a refund in cash in the year subsequent to the final determination if the credit granted against taxes in that year does not fully grant to the company the full amount of the credit awarded to the company by the court, along with the interest provided for in Subsubparagraph (i).
(b) The Louisiana Tax Commission may adopt rules and regulations pertaining to credits generally and to the transferability of such credits.
(2) In all cases in which a judgment is entered against the company, each tax recipient body shall remit an amount equal to ten percent of the difference between the amount of taxes received, less any credits, and that which would have been received had the company’s own set of assessed valuations been upheld to the Louisiana Tax Commission, which shall then forward such amount directly to the state treasurer.
Subsequently, Subsection F was rewritten by 2004 La. Acts, No. 461, § 3, effective July 1, 2006.

. ANR Pipeline Co. v. Louisiana Tax Com’n, 05-2372 (La.3/17/06), 925 So.2d 547, cert. denied, 549 U.S. 822, 127 S.Ct. 157, 166 L.Ed.2d 38 (2006).

. The taxpayers also sought review of the LTC's ruling within the prior proceedings, that is, docket number 468,417 and the other consolidated cases.

. The relevant parts of the applicable version of La. R.S. 47:1998 provided:
A. (l)(a) Any taxpayer or bona fide representative of an affected tax-recipient body in the state dissatisfied with the final determination of the Louisiana Tax Commission under the provisions of R.S. 47:1989 shall have the right to institute suit within thirty days of the entry of any final decision of the Louisiana Tax Commission in the district court for the parish where the Louisiana Tax Commission is domiciled or the district court of the parish where the property is located contesting the correctness of assessment. Any taxpayer who owns property assessed in more than one parish may institute this suit in either the district court for the parish where the tax commission is domiciled or the district court of any one of the parishes in which the property is located and assessed, provided at least twenty-five percent of the parishes where the property is located are named in the suit. However, if at least twenty-five percent of the parishes are not named in the suit, then suit must be filed in the parish where the property is located.
[[Image here]]
C. The assessor shall bring suit, when necessary to protect the interest of the state, and shall also have the right of appeal and such proceedings shall be without cost to him or the state.
La. R.S. 47:1998(C) was subsequently amended by 2010 La. Acts, No. 926, § 1, to add a provision pertaining to the initiation of a lawsuit against a taxpayer who is suspected of concealing property from assessment.

. La. R.S. 47:1903.3 provides:
Notwithstanding any other law to the contrary, in any cause of action brought under the provisions of R.S. 47:1856, '1857, 1998, or 2110, the assessor of the parish or *741 district where the property is located may intervene in such suit and become a party thereto.

. In Gisclair II, the court found that the right to bring an “as applied” challenge regarding tax valuation of public service property belongs solely to the public service taxpayer, and not to the assessor. Gisclair II, 44 So.3d at 278-80.

. The district court proceedings were stayed pending the resolution of the appeal, of the judgment on the exception. See ANR Pipeline Co. v. Louisiana Tax Com’n, 10-2184 (La.App. 1 Cir. 1/7/11) (unpublished writ action).

. La. R.S. 47:1989 pertains to the LTC's review of an appeal from the determination of a local board of review.

. SeeLa. R.S. 47:1856.

. La. Const, art. I, § 2 provides: "No person shall be deprived of life, liberty, or property, except by due process of law.”

. La. Const, art. I, § 22 provides: "All courts shall be open, and every person shall have an adequate remedy by due process of law and justice, administered without denial, partiality, or unreasonable delay, for injury to him in his person, property, reputation, or other rights.”

. La. R.S. 47:1854 provides:
All public service properties shall be assessed for taxation in accordance with the *745 provisions of the Louisiana Constitution of 1974. Land shall be assessed at ten percent of fair market value; electric cooperative properties shall be assessed at fifteen percent of fair market value; and all other properties shall be assessed at twenty-five percent of fair market value.

. La. R.S. 47:1856 provides:
A. (1) The Louisiana Tax Commission shall give notice of the initial determination of the assessed valuation in writing to the company. This notice shall be delivered by certified mail, return receipt requested addressed to, or by personal service upon, the officer or authorized agent of the company responsible for the filing of the annual report. Except as provided in R.S. 47:1856(G), in the event that the company objects to the initial determination by the Louisiana Tax Commission, it may, within thirty days after receipt of the notice of that initial determination, file a protest in writing to the Louisiana Tax Commission which protest shall fully disclose the reason for protesting the initial determination.
(2) The initial determination by the Louisiana Tax Commission shall become final if no protest is filed with the Louisiana Tax Commission within thirty days after receipt by the company of the notice of the initial determination.
(3) In the event that a protest is filed, the Louisiana Tax Commission shall grant a full and complete hearing to the company at a time and place to be determined by the Louisiana Tax Commission, but in no case shall the hearing be scheduled more than one hundred eighty days from the date the company filed its written protest in the case of public service property. Such hearing shall not be consolidated with any other hearing with respect to any other protest filed in a different tax year by the taxpayer or by any other taxpayer of an initial determination of assessed valuation by the Louisiana Tax Commission.
B. At the hearing, the company shall assert all objections to the initial determination by the Louisiana Tax Commission and may file a statement under oath specifying each respect in which the initial determination is contested. The company may also offer full and complete testimony in support of its objections. Within thirty days following the completion of the hearing, the Louisiana Tax Commission shall notify the company, by the method specified in Subsection A of this Section, of its final determination.
C.Should the company not appear for a hearing scheduled pursuant to the provisions of Subsection A, or should the company fail to request a hearing on the initial determination by the Louisiana Tax Commission, the initial determination shall become the final determination of the Louisiana Tax Commission.
D. (1) Any company that is dissatisfied with the final determination of assessed valuation by the Louisiana Tax Commission may institute suit appealing the correctness or legality of such final determination of assessed valuation for taxation by the Louisiana Tax Commission. However, to state a cause of action, the petition instituting such suit shall name the Louisiana Tax Commission as defendant and shall set forth not only the final determination of assessed valuation for taxation made by the Louisiana Tax Commission appealed from, but also the assessed valuation for taxation that the company deems to be correct and legal and the reasons therefor.
(2) The proceedings in such suit shall be tried by preference, whether or not out of term time, at such time as fixed by the district court. No new trial or rehearing shall be allowed.
(3) Any appeal from a judgment of the district court shall be heard by preference within sixty days of the lodging of the record in the court of appeal. The appeal shall be taken thirty days from the date the judgment of the district court is rendered. If such appeal is timely filed, any amount of taxes that were paid under protest pursuant to Subsection E of this Section shall remain segregated and invested pursuant to Subsection E of this Section and no bond or other security shall be necessary to perfect such appeal.
(4) In the event the supreme court grants a writ of certiorari, the court shall hear the appeal on the next regular docket of the court.
E. Any company instituting suit under the provisions of Subsection D of this Section *746 shall pay the disputed portion of its taxes under protest to the officer or officers designated by law for the collection of such taxes and shall cause notice or notices to issue in such suit to such officer or officers as provided in R.S. 47:2134(B). However, the portion of taxes that are not in dispute by the taxpayer shall be paid without being made subject to the protest.
F. (1) If the assessed valuation finally determined by the court is greater than the company’s own assessed valuation, the court shall enter judgment against the company for the additional taxes due together with interest at the actual rate earned on the funds paid under protest, segregated and invested, which interest shall be paid solely from such funds. In any case in which a judgment is entered against the company, each tax recipient body shall remit an amount equal to ten percent of the proceeds received pursuant to the judgment to the Louisiana Tax Commission, which shall then forward such amount directly to the state treasurer.
(2) If the taxpayer prevails, the court shall enter judgment against the officer or officers designated by law for the collection of such taxes ordering such officer or officers to immediately refund to the company the amount of any overpayment of taxes together with interest at the actual rate earned on the funds paid under protest, segregated and invested during the period, from the date such funds were received by such officer or officers to the date of such refund or refunds, which interest shall be paid solely from such funds.
G. Any taxpayer asserting that a law or laws, including the application thereof, related to the valuation or assessment of public service properties is in violation of any act of the Congress of the United States, the Constitution of the United States, or the constitution of the state shall file suit in accordance with the provisions of R.S. 47:2134(C) and (D). The provisions of R.S. 47:1856(E) and (F) shall be applicable to such proceedings; however, the tax commission and all affected assessors and the officers responsible for the collection of any taxes owed pursuant to such assessment shall be made parties to such suit. If such suit affects assessments of property located in more than one parish, such suit may be brought in either the district court for the parish in which the tax commission is domiciled or the district court of any one of the parishes in which the property is located and assessed. No bond or other security shall be necessary to perfect an appeal in such suit. Any appeal from a judgment of the district court shall be heard by preference within sixty days of the lodging of the record in the court of appeal. The appeal shall be taken thirty days from the date the judgment of the district court is rendered.

.According to La. R.S. 47:1856(A), notice of the initial determination "shall be delivered [by the LTC] by certified mail, return receipt requested addressed to, or by personal service upon, the officer or authorized agent of the company responsible for the filing of the annual report.”

. Notably, the record is devoid of any evidence that the taxpayers received written notice of the LTC's initial determination of the reassessed valuation as required by La. R.S. 47:1856(A)(1).

. Quoted supra at footnote 17.

. Quoted supra at footnote 17.

. La. R.S. 47:2134(B)(3) provides:
In a correctness challenge suit under either R.S. 47:1856, 1857, or 1998 the officer or officers designated for the collection of taxes in the parish or parishes in which the property is located, the assessor or assessors for the parish or district, or parishes or districts, in which the property is located, and the Louisiana Tax Commission shall be the sole necessary and proper party defendants in any such suit.

. See La. R.S. 47:1903.3.

. The LTC has original jurisdiction over correctness challenges. The district court has only appellate jurisdiction over correctness challenges. ANR IV, 02-1479 at 6, 851 So.2d at 1149; see also La. R.S. 47:1856(D)(1).